# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2453

_____

United States of America,             \*

                                \*

        Appellant,         \*

                                \*   Appeal from the United States

    v.                   \*   District Court for the

                                \*   Northern District of Iowa.

Jason Pepper,                 \*

                                \*

        Appellee.          \*

_____

Submitted: March 13, 2007
Filed: May 21, 2007

_____

Before RILEY, BOWMAN, and ARNOLD, Circuit Judges.

_____

RILEY, Circuit Judge.

This case returns after a remand to the district court for resentencing. In United States v. Pepper, 412 F.3d 995, 999 (8th Cir. 2005) (Pepper I), we held the district court erred by granting a 75% downward departure for substantial assistance and imposing a sentence of 24 months' imprisonment, because the district court erroneously based the extent of the departure on matters unrelated to Jason Pepper's (Pepper) assistance. On remand, the district court granted a 40% downward departure (five offense levels) for substantial assistance, followed by a 59% downward variance (eight offense levels), and again imposed a sentence of 24 months' imprisonment. The government appeals. We reverse.

## I.    BACKGROUND

Pepper pled guilty to conspiracy to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. Pepper's total offense level of 30 and criminal history category I produced an advisory United States Sentencing Guidelines range of 97 to 121 months. Pepper was eligible for safety-valve relief, thus the statutory mandatory minimum sentence of 120 months' imprisonment did not apply. See 18 U.S.C. § 3553(f), U.S.S.G. §§ 2D1.1(b)(6), and 5C1.2. In Pepper's initial sentencing, the government filed a motion for substantial assistance, pursuant to U.S.S.G. § 5K1.1, and recommended a 15% downward departure. The district court departed downward 75% and sentenced Pepper to 24 months' imprisonment. We reversed, finding the district court erred by considering factors unrelated to Pepper's assistance in granting the § 5K1.1 downward departure motion, and we remanded, concluding "given the pedestrian nature of Mr. Pepper's assistance, it is far from certain that the court would have arrived at the same guidelines sentence had it considered only assistance-related elements when deciding the extent of the departure." Pepper I, 412 F.3d at 999.

On remand, the district court found Pepper's assistance merited a 40% downward departure, which reduced the bottom of the advisory sentencing Guidelines range to 58 months. Then, under 18 U.S.C. § 3553(a), the district court granted a downward variance of 59%, based on Pepper's post-sentencing rehabilitation, lack of "violent" history, and, to a lesser degree, on the need to avoid unwarranted sentencing disparity among co-defendants. The district court again imposed a sentence of 24 months' imprisonment. This appeal followed.

## II.    DISCUSSION
### A.    Substantial Assistance Departure

The government argues the district court abused its discretion by granting a 40% downward departure given the pedestrian nature of Pepper's assistance. We

review for abuse of discretion the extent of a reduction for substantial assistance. United States v. Coyle, 429 F.3d 1192, 1193 (8th Cir. 2005).

At the resentencing hearing, the government described Pepper's assistance, which included debriefing with law enforcement immediately after his arrest, a proffer interview, and testifying before the grand jury against two defendants. The government acknowledged Pepper was the main witness against one of the two defendants.

Although there is no bright line percentage or mathematical formula to determine when the extent of a substantial assistance departure becomes unreasonable, see, e.g., United States v. Haack, 403 F.3d 997, 1005 (8th Cir. 2005), some proportionality must exist between the defendant's assistance and the extent of the departure; for example, an extraordinary departure must be supported by extraordinary circumstances, see, e.g., United States v. Saenz, 428 F.3d 1159, 1162-65 (8th Cir. 2005) (concluding a 68% substantial assistance downward departure (eleven offense levels) was "excessive and unreasonable under the circumstances"); United States v. Dalton, 404 F.3d 1029, 1030, 1033-34 (8th Cir. 2005) (concluding there were no extraordinary circumstances to support the extraordinary 75% downward departure (thirteen offense levels), aff'd after remand, 478 F.3d 879 (8th Cir. 2007). But see United States v. Pizano, 403 F.3d 991, 995-97 (8th Cir. 2005) (affirming a 75% substantial assistance downward departure (twelve offense levels), where the defendant's assistance was extraordinary). We believe reasonable proportionality exists here between Pepper's assistance and the downward departure. The district court properly identified only assistance-related factors and noted, although Pepper's assistance was "pedestrian or average," it was timely, truthful, honest, helpful, and important. The district court considered the § 5K1.1 factors, including the government's recommendation, but felt Pepper's assistance was worth more than the recommended 15% downward departure. The district court found, under Eighth Circuit precedent, Pepper's assistance merited "something less than a 50 percent

reduction" and determined a 40% reduction was warranted. Although we believe it is a close call, we cannot say the district court abused its discretion by the extent of the § 5K1.1 departure.

### B. Downward Variance

The government next argues the district court abused its discretion in granting a 59% variance. "We review a district court's interpretation and application of the guidelines de novo, its factual findings for clear error, and any decision to depart from the appropriate guidelines range for abuse of discretion." United States v. Judon, 472 F.3d 575, 583 (8th Cir. 2007). A district court's decision to vary from the advisory sentencing Guidelines range is reviewed for reasonableness, which is a similar standard to the abuse of discretion standard. Id. "A sentencing court abuses its discretion if its fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." United States v. Long Soldier, 431 F.3d 1120, 1123 (8th Cir. 2005).

The district court's § 5K1.1 downward departure brought the bottom of the Guidelines range to 58 months. Thereafter, the district court stated, "I am going to do a variance down to 24 months" and noted the significance of varying from 58 months to 24 months.

In considering evidence in the record to support the variance, the district court first mentioned Pepper had "no history of violence." The district court tried to distinguish Pepper's lack of violent history from Pepper's lack of a criminal history, stating "you could have a history of violence in your record . . . and have a criminal history or not have a criminal history." This vague distinction is unpersuasive. The district court did not substantiate what it meant by "no history of violence." Indeed, if Pepper had a violent *criminal* history, he would have been ineligible for safety-valve relief, subject to the 120-month statutory mandatory minimum, and the

possibility of an enhancement or an upward departure. To the extent the district court considered the absence of violence in Pepper's life generally, we have previously held "[t]he absence of grounds that justify further punishment is not a ground for a downward variance." United States v. Feemster, __ F.3d __, __, 2007 WL 1201885, at *5 (8th Cir. Apr. 25, 2007). The district court's failure to distinguish Pepper's lack of violent history leads us to the inescapable conclusion the district court impermissibly double counted by considering as a § 3553(a) factor Pepper's already accounted for lack of criminal history. See United States v. Claiborne, 439 F.3d 479, 481 (8th Cir.) (concluding an extraordinary downward variance of 60% (seven offense levels), was not supported by defendant's lack of criminal history, which already had been accounted for by defendant's safety-valve relief and criminal history category I), cert. granted, 127 S. Ct. 551 (2006); see also United States v. Gonzalez-Alvarado, 477 F.3d 648, 651 (8th Cir. 2007) (noting drastic reductions are discouraged "absent extraordinary circumstances, especially when the sentencing guidelines already significantly reflect the mitigating factors").

The district court next considered unwarranted sentencing disparity among co-conspirators:[1] Alexander Blankenship (Blankenship) sentenced to 72 months' imprisonment, Felipe Sandoval (Sandoval) sentenced to 35 months' imprisonment, and Jose Martin Barragan-Torres (Barragan-Torres) sentenced to 90 months' imprisonment. To the extent unwarranted sentencing disparities among co-conspirators and co-defendants are a proper consideration under 18 U.S.C. § 3553(a)(6),[2] see United States v. Lazenby, 439 F.3d 928, 934 (8th Cir. 2006) (citing

_____

[1]The district court indicated its consideration of unwarranted sentencing disparity among the co-defendants was not a primary factor in granting a downward variance.

[2]We note "§ 3553(a)(6) may more appropriately apply to disparities on a national level and not within the same conspiracy," but we continue to follow our own precedent. United States v. Kane, 470 F.3d 1277, 1281 (8th Cir. 2006) (citing United States v. Parker, 462 F.3d 273, 277 (3d Cir.) (concluding "Congress's primary goal

-5-

18 U.S.C. § 3553(a)(6)), it does not justify a downward variance in this case. The district court never mentioned the disparity to be avoided, the relative culpability of the co-defendants, the extent of any co-defendant's assistance, the co-defendants' reductions, or whether Pepper was similarly situated to the co-defendants. Furthermore, the district court did not discuss co-defendant Barragan-Torres, who was sentenced to 90 months' imprisonment, which is 66 months or 73% *greater* than Pepper's sentence. The district court did not adequately explain and support its rationale for sentencing Pepper to 24 months' imprisonment in contrast to Pepper's co-defendants, who received 72, 35, and 90 months' imprisonment.

Finally, the district court questioned Pepper regarding his post-sentence conduct. Pepper testified about his community college attendance, work record, sobriety, and compliance with the other conditions of his supervised release. In granting the downward variance the district court acknowledged, "I don't know whether or not it's appropriate to consider the release–the year he's been out now, almost a year, how well he's done." Nonetheless, the district court concluded, "I'm not going to be disingenuous and say that I haven't considered [Pepper]'s post-release conduct because I have considered it. Exactly how much weight I'm giving it, I don't know exactly."

Our court recently considered the relevance of post-sentence rehabilitation, see United States v. Jenners, 473 F.3d 894, 899 (8th Cir. 2007) (citing United States v. Sims, 174 F.3d 911, 913 (8th Cir.1999)), and held "evidence of [defendant]'s post-sentencing rehabilitation is not relevant and will not be permitted at resentencing because the district court could not have considered that evidence at the time of the original sentencing." The practice of allowing consideration of post-sentencing rehabilitation upon resentencing would create unwarranted sentencing disparities and

in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case"), cert. denied, 127 S. Ct. 462 (2006)).

inject blatant inequities into the sentencing process. Pepper's post-sentencing rehabilitation was an impermissible factor to consider in granting a downward variance.

The lack of clarity regarding the extent to which the district court relied on any one factor notwithstanding, we conclude the district court abused its discretion in granting the downward variance. The district court failed to balance the other factors in § 3553(a), such as the need to impose a sentence reflecting the seriousness of Pepper's offense, which involved between 1,500 and 5,000 grams of methamphetamine mixture and ten to fifteen people, or how, in this case, a sentence of 24 months would promote respect for the law. The district court impermissibly considered Pepper's post-sentence rehabilitation, and further erred by considering Pepper's lack of violent history, which history had already been accounted for in the sentencing Guidelines calculation, and by considering sentencing disparity among Pepper's co-defendants without adequate foundation and explanation.

## III.  CONCLUSION

For the reasons stated, we reverse and remand this case for resentencing consistent with this opinion. The district court expressed a reluctance to resentence Pepper again should this case be remanded. Thus, we remand Pepper's case for re-sentencing by a different judge, pursuant to our authority under 28 U.S.C. § 2106. See United States v. Rogers, 448 F.3d 1033, 1035 (8th Cir. 2006) (per curiam) (citing Liteky v. United States, 510 U.S. 540, 554 (1994) (discussing the authority to assign a case to a different judge on remand comes from "the appellate courts' statutory power to 'require such further proceedings to be had as may be just under the circumstances'" (quoting 28 U.S.C. § 2106))). The chief judge of the district court shall reassign this case, in the ordinary course, for resentencing by another judge.

_____