# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2453

_____

United States of America,            *
                              *

          Appellant,       *

                              *   Appeal from the United States
     v.                    *   District Court for the
                              *   Northern District of Iowa.
                              *

Jason Pepper,               *
                              *

          Appellee.        *

_____

Submitted: February 15, 2008
Filed: March 11, 2008

_____

Before RILEY, BOWMAN, and ARNOLD, Circuit Judges.

_____

RILEY, Circuit Judge.

This case is before us for the third time. In <u>United States v. Pepper</u>, 412 F.3d 995, 999 (8th Cir. 2005) (<u>Pepper I</u>), we held the district court erred by granting a 75% downward departure for Jason Pepper's (Pepper) substantial assistance and imposing a sentence of 24 months imprisonment, because the district court erroneously based the extent of the departure on matters unrelated to Pepper's assistance. On remand, the district court granted a 40% downward departure (five offense levels) for substantial assistance, followed by a 59% downward variance (eight offense levels), and again imposed a sentence of 24 months imprisonment. The government appealed.

We reversed and remanded the case for resentencing by a different judge, pursuant to our authority under 28 U.S.C. § 2106. United States v. Pepper, 486 F.3d 408, 413 (8th Cir. 2007) (Pepper II). Pepper appealed. The Supreme Court vacated our judgment and remanded the case to us for further consideration in light of Gall v. United States, 522 U.S. ___, 128 S. Ct. 586, ___ L.Ed.2d ___ (2007). Having carefully considered Gall's impact on Pepper's case, we again reverse the sentence of the district court and remand for resentencing by a different judge.

I.      BACKGROUND

From Pepper II we know Pepper pled guilty to conspiracy to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. Pepper's total offense level of 30 and criminal history category of I produced an advisory United States Sentencing Guidelines range of 97 to 121 months. Pepper was eligible for safety-valve relief, thus the statutory mandatory minimum sentence of 120 months imprisonment did not apply. See 18 U.S.C. § 3553(f), U.S.S.G. §§ 2D1.1(b)(6), and 5C1.2. In Pepper's initial sentencing, the government filed a motion for substantial assistance, pursuant to U.S.S.G. § 5K1.1, and recommended a 15% downward departure. The district court departed downward 75% and sentenced Pepper to 24 months imprisonment. We reversed, finding the district court erred by considering factors unrelated to Pepper's assistance in granting the § 5K1.1 downward departure motion, concluding "given the pedestrian nature of Mr. Pepper's assistance, it is far from certain that the court would have arrived at the same guidelines sentence had it considered only assistance-related elements when deciding the extent of the departure." Pepper II, 486 F.3d at 410 (quoting Pepper I, 412 F.3d at 999).

On remand, the district court found Pepper's assistance merited a 40% § 5K1.1 downward departure, which reduced the bottom of the advisory sentencing Guidelines range to 58 months. Then, under 18 U.S.C. § 3553(a), the district court granted a downward variance of 59%, based on Pepper's post-sentencing rehabilitation, lack of

violent history, and, to a lesser degree, on the need to avoid unwarranted sentencing disparity among co-defendants. The district court again imposed a sentence of 24 months imprisonment. Pepper II, 486 F.3d at 410. We found the district court did not abuse its discretion by the extent of the § 5K1.1 downward departure. Id. at 411. We did find "[t]he district court impermissibly considered Pepper's post-sentence rehabilitation, and further erred by considering Pepper's lack of violent history, which history had already been accounted for in the sentencing Guidelines calculation, and by considering sentencing disparity among Pepper's co-defendants without adequate foundation and explanation." Id. at 413.

## II.    DISCUSSION

We review all sentences, whether inside or outside the Guidelines range, under a deferential abuse of discretion standard. Gall, 128 S. Ct. at 597. Before reaching the substantive reasonableness of the sentence, we "must first ensure that the district court committed no significant procedural error, such as . . . failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." Id. Although extraordinary circumstances are not required to justify a sentence outside the Guidelines range, "a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." Id. at 594.

> If [the district court] decides that an outside-Guidelines sentence is warranted, [the district court] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. . . . [A] major departure should be supported by a more significant justification than a minor one.
>
> . . .
>
> [T]he [appellate] court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range.

Id. at 597. An abuse of discretion may occur when a court "gives significant weight to an improper or irrelevant factor." United States v. Haack, 403 F.3d 997, 1004 (8th Cir. 2005). See Gall, 128 S. Ct. at 597. These rules guide our analysis.

The district court erred because, to the extent the district court explained Pepper's sentence at all, the district court predominantly considered improper factors. Put another way, the district court committed procedural error in failing adequately to explain with sufficient justifications the court's conclusion that a 59% variance after the § 5K1.1 downward departure was warranted in this case.

First, the district court considered Pepper had "no history of violence." Although the district court attempted to distinguish Pepper's lack of a violent history from Pepper's lack of a violent criminal history, in Pepper II we found this distinction vague and unpersuasive because "[t]he district court did not substantiate what it meant by 'no history of violence.'" Pepper II, 486 F.3d at 412. Because the district court did not adequately explain what it meant by "no history of violence," we reached the "inescapable conclusion" the district court improperly "double counted" Pepper's lack of a violent history in arriving at Pepper's sentence. Id. We reasoned:

> [I]f Pepper had a violent *criminal* history, he would have been ineligible for safety-valve relief, subject to the 120-month statutory mandatory minimum, and the possibility of an enhancement or an upward departure. To the extent the district court considered the absence of violence in Pepper's life generally, we have previously held the absence of grounds that justify further punishment is not a ground for a downward variance.

Id. (quotations and citations omitted). Our reasoning in Pepper II is consistent with Gall. Gall requires a district judge to explain adequately and provide sufficient justifications for why an unusually lenient sentence such as Pepper's is appropriate.

-4-

Gall, 128 S. Ct. at 527. The district court in Pepper's case provided insufficient explanation of the "no history of violence" factor.

The district court next considered the desire to avoid unwarranted sentencing disparity among co-conspirators.[1] Pepper's three co-defendants were sentenced to 35, 75, and 90 months imprisonment. As we noted in Pepper II, "[t]he district court never mentioned the [unwarranted sentencing] disparity to be avoided, the relative culpability of the co-defendants, the extent of any co-defendant's assistance, the co-defendants' reductions, or whether Pepper was similarly situated to the co-defendants." 486 F.3d at 412. Indeed, considering co-defendant Baragan-Torres' 90 month sentence and co-defendant Blankenship's 72 month sentence, it appears Pepper's 24 month sentence *creates*, rather than avoids, sentencing disparity among co-conspirators. In light of Gall's requirement that sentencing judges adequately explain the chosen sentence, we correctly concluded in Pepper II that "[t]he district court did not adequately explain and support its rationale for sentencing Pepper to 24 months' imprisonment in contrast to Pepper's co-defendants[.]" Id. at 413.

Finally, and most significantly, the district court apparently gave significant weight to Pepper's post-sentence rehabilitation. As we discussed in Pepper II, "'evidence of [a defendant]'s post-sentence rehabilitation is not relevant and will not be permitted at resentencing because the district court could not have considered that evidence at the time of the original sentencing.'" Id. (quoting United States v. Jenners, 473 F.3d 894, 899 (8th Cir. 2007)). See also United States v. McMannus, 496 F.3d 846, 852 n.4 (8th Cir. 2007) (noting that "allowing [post-sentence rehabilitation] evidence to influence [a defendant]'s sentence would be grossly unfair to the vast majority of defendants who receive no sentencing-court review of any positive post-sentencing rehabilitative efforts").

---

[1]The district court indicated it was "not giving a lot of weight" to this factor.

At resentencing, Pepper testified extensively, and almost exclusively, about his post-sentencing rehabilitation, including participation in a drug treatment program while incarcerated, community college attendance, work record, and compliance with the conditions of his supervised release. Pepper's father also testified about Pepper's maturity and sobriety since his release. In addition, a substantial portion of the sentencing memorandum prepared by the United States probation officer discussed Pepper's post-sentence rehabilitation. The district court explicitly adopted as its findings of fact the testimony of Pepper, Pepper's father, and the sentencing memorandum. Although the district court acknowledged it may not be appropriate to consider Pepper's post-sentence conduct, the court nevertheless stated, "I'm not going to be disingenuous and say that I haven't considered [Pepper]'s post-release conduct because I have considered it. Exactly how much weight I'm giving it, I don't know exactly." The record leaves little doubt Pepper's post-release rehabilitation was indeed given significant weight, and possibly overwhelming weight, in imposing the 24 month sentence. <u>Gall</u> does not alter our circuit precedent or our conclusion in <u>Pepper II</u> that post-sentence rehabilitation is an impermissible factor to consider in granting a downward variance.

Because the district court procedurally erred by failing to explain adequately Pepper's sentence and by relying predominantly on improper factors to determine the sentence variance, we need not reach the issue of whether Pepper's sentence was substantively reasonable.

## III.   CONCLUSION

For the foregoing reasons, we again reverse and remand Pepper's case for resentencing consistent with this opinion. As the district court expressed a reluctance to resentence Pepper again should the case be remanded, we again remand this case for resentencing by a different judge, pursuant to our authority under 28 U.S.C. § 2106. <u>See</u> <u>United States v. Rogers</u>, 448 F.3d 1033, 1035 (8th Cir. 2006) (per curiam) (citing <u>Liteky v. United States</u>, 510 U.S. 540, 554 (1994) (noting the authority

-6-

to assign a case to a different judge on remand comes from "the appellate courts' statutory power to 'require such further proceedings to be had as may be just under the circumstances'" (quoting 28 U.S.C. § 2106))). The chief judge of the district court shall reassign this case, in the ordinary course, for resentencing by another judge.

_____