# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1103

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | On remand for reconsideration from |
| v. | * | the United States Supreme Court. |
| | * | |
| Ruth Kane, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: September 22, 2008
Filed: January 14, 2009

_____

Before MURPHY, HANSEN, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Ruth Kane (Kane) repeatedly restrained and compelled her nine-year-old daughter to submit to the sexual gratification of a pedophile in exchange for Kane's receipt of $20. This sexual abuse occurred approximately twice a week for more than 200 molestations. A jury found Kane guilty of aggravated sexual abuse and conspiracy to commit aggravated sexual abuse. The district court sentenced Kane to 210 months imprisonment.

Kane appealed. We affirmed Kane's conviction, but vacated her sentence and remanded for resentencing pursuant to United States v. Booker, 543 U.S. 220 (2005).

See <u>United States v. Kane</u>, 148 Fed. Appx. 565, 568 (8th Cir. 2005) (unpublished). The district court resentenced Kane to 120 months imprisonment. The government appealed. We reversed, holding Kane's 120-month sentence was unreasonable. <u>See</u> <u>United States v. Kane</u>, 470 F.3d 1277, 1282 (8th Cir. 2006) (<u>Kane II</u>). The Supreme Court vacated and remanded for reconsideration in light of <u>Gall v. United States</u>, 128 S. Ct. 586 (2007). Having considered <u>Gall</u>'s impact on Kane's sentence, we again vacate the sentence of the district court and remand for resentencing.

## I.  BACKGROUND

In <u>Kane II</u> we set forth the factual background:

> At trial, both Kane's minor daughter and Kane's co-defendant, Joe J. Champion (Champion), testified Champion sexually abused Kane's daughter repeatedly over a two-year period. The first molestation occurred when Kane's daughter was nine years old. Kane's daughter testified Kane took her into the bathroom, where Champion was waiting, and [Kane] told her [daughter] to take off her clothes. Kane sat on the toilet and held her daughter on her lap, while Champion removed his pants and then put his penis against Kane's daughter's vagina. Kane's daughter testified it hurt and she passed out. Kane's daughter indicated when she woke up she found blood on her thigh and started to cry. Kane told her to clean up the mess.

> According to Kane's daughter, the molestation occurred approximately twice a week. Kane's daughter testified Kane and Champion would typically take her into the bathroom, and Kane would restrain her on Kane's lap while Champion rubbed his penis against her vagina until he ejaculated on her stomach.

> Kane's daughter testified the molestation also occurred in Kane's bedroom. Kane's daughter testified she would lie on the bed and Champion would rub his penis against her vagina until Champion ejaculated. Throughout the encounter, Kane would either stand against the bedroom door or lie with her daughter on the bed. When the encounter was over[,] Kane would wipe away Champion's semen as

-2-

Kane's daughter cried. Champion abused Kane's daughter in this manner more than 200 times. Kane's daughter and Champion testified Kane received payments of $20 from Champion as compensation for providing her daughter for Champion's sexual gratification.

Kane II, 470 F.3d at 1279.

At Kane's sentencing, the district court indicated its reasons for the variance were (1) the district court's finding Kane posed a low risk of recidivism; (2) Kane's prior history of substance abuse and mental health issues; (3) the district court's finding Kane was vulnerable, and participated in her daughter's abuse because she was influenced by Champion; (4) Kane's post-conviction efforts at rehabilitation; and (5) the district court's belief Champion, who was sentenced to 180 months imprisonment, was "far more culpable" than Kane. We reversed, holding Kane's 120-month sentence was unreasonable. Kane II, 470 F.3d at 1282. We concluded Kane's sentence was unreasonable because (1) there was no evidence in the record to support the conclusion Kane probably will not repeat this type of crime; (2) there was no evidence in the record linking Kane's mental health issues or drug abuse to Kane's crimes against her daughter; (3) there was no evidence in the record indicating Kane committed these crimes because she was influenced by Champion; (4) a variance based on Kane's post-sentence rehabilitation efforts was inappropriate; (5) the district court failed sufficiently to consider the seriousness of the offense; and (6) Kane's sentence, not Champion's, reflected an unwarranted sentencing disparity. Id. at 1780-82. The Supreme Court vacated and remanded for reconsideration in light of Gall.

## II. DISCUSSION
### A. Standard of Review

"We review all sentences, whether inside or outside the Guidelines range, under a deferential abuse of discretion standard." United States v. Pepper, 518 F.3d 949, 951 (8th Cir. 2008) (citing Gall, 128 S. Ct. at 597). "First, we will ensure that the district court did not commit a significant procedural error, such as miscalculating the

Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain why a sentence was chosen." United States v. Braggs, 511 F.3d 808, 812 (8th Cir. 2008) (citing Gall, 128 S. Ct. at 597).

Under Gall, we may no longer require extraordinary circumstances to justify a sentence outside the Guidelines range. Gall, 128 S. Ct. at 595. However, "a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." Id. at 594. If, after an "individualized assessment based on the facts presented," the district court "decides that an outside-Guidelines sentence is warranted, [the district court] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Id. at 597. It is "uncontroversial that a major departure should be supported by a more significant justification than a minor one." Id. "[A]n abuse of discretion may occur when (1) a court fails to consider a relevant factor that should have received significant weight; (2) a court gives significant weight to an improper or irrelevant factor; or (3) a court considers only the appropriate factors but in weighing those factors commits a clear error of judgment." United States v. Haack, 403 F.3d 997, 1004 (8th Cir. 2005) (internal quotation marks and citation omitted). See also Gall, 128 S. Ct. at 597.

"Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard . . . tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." Gall, 128 S. Ct. at 597. We "may consider the extent of the deviation, but [we] must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Id.

The government argues Kane's sentence was procedurally unsound because the district court considered clearly erroneous facts, gave significant weight to improper and irrelevant factors, failed to consider a relevant factor that should have received significant weight, and failed adequately to explain Kane's unusually lenient sentence with sufficient justifications. The government also maintains Kane's sentence was substantively unreasonable, arguing a "totality of the circumstances" analysis must take into account the horrific facts and shocking breach of parental trust in this case—Kane's active and willing participation in the sexual violations of her own daughter, in exchange for $20, on more than 200 occasions.

### B. Clearly Erroneous Findings
### 1. Likelihood of Recidivism

At Kane's sentencing, the district court stated, without elaboration: "[a]nd I don't think you pose a danger to the public or likelihood that you'll be a recidivist." In <u>Kane II</u>, we determined "[n]othing in the record supports the district court's conclusion Kane probably will not repeat this type of crime." <u>Kane II</u>, 470 F.3d at 1281. Kane argues her age and the Sentencing Commission's study on recidivism, which she included with her sentencing memorandum, provided a sufficient basis for the district court's determination Kane posed a low risk of recidivism. We disagree. The facts show Kane repeated her crime over and over again. Instead of protecting her daughter and choosing to stop participating in her daughter's abuse after the first, or 50th, or 150th molestation, Kane continued to hold her daughter down or block the door on more than 200 occasions while Champion sexually violated the child.

Kane does not contend <u>Gall</u> somehow alters our conclusion on the recidivism issue; Kane simply argues our conclusion is wrong. Kane's argument merely repeats the argument she presented in <u>Kane II</u>, which we rejected. See <u>Kane II</u>, 470 F.3d at 1281. Our sole inquiry here is whether and to what extent <u>Gall</u> impacts our reasoning or our decision in <u>Kane II</u>. <u>Gall</u> expressly recognizes it is procedural error to "select[] a sentence based on clearly erroneous facts." <u>Gall</u>, 128 S. Ct. at 597. The district

-5-

court's finding Kane posed a low likelihood of recidivism, which was clearly erroneous before <u>Gall</u>, remains clearly erroneous after <u>Gall</u>. We therefore conclude the district court procedurally erred by basing Kane's unusually lenient sentence, in significant part, on its unsupported determination Kane posed a low likelihood of recidivism.

### 2. Mental Health, Substance Abuse, and Champion's Influence

Similarly, <u>Gall</u> has no effect on the validity of our determinations in <u>Kane II</u> that there was no evidence in the record (1) linking Kane's past substance abuse or mental health issues to Kane's crimes against her daughter, or (2) indicating Kane committed these crimes because she was influenced by Champion. <u>See</u> <u>Kane II</u>, 470 F.3d at 1281. At Kane's sentencing, the district court stated, "I believe that you made yourself vulnerable with all these drugs and alcohol and all that stuff. See, you were like an accident waiting to happen." The district court further explained, "I've gone below the guidelines in your case because of your prior history of this substance abuse as well as your mental health. That made you particularly susceptible to Mr. Champion's influence."

There is certainly evidence in the record indicating Kane had a past history of substance abuse and mental health issues. However, many people have substance abuse and mental health issues, but few, if any, of those people participate in and sell their minor child to a pedophile for sexual exploitation. We explained in <u>Kane II</u> that the record is devoid of evidence "linking Kane's substance abuse or mental illness with the crimes Kane committed against her daughter. Nor is there evidence in the record indicating Kane committed these crimes because she was susceptible to, or influenced by, Champion." <u>Kane II</u>, 470 F.3d at 1281. The record contains no factual support for the district court's theories that Kane's past substance abuse and mental health issues caused Kane to be victimized by Champion, thereby minimizing Kane's responsibility for, or somehow mitigating, Kane's crimes against her daughter.

Though not specifically argued by the parties, the district court also clearly erred in its assessment of Kane's responsibility for her daughter's abuse. At Kane's sentencing, the district court acknowledged Kane "had a big responsibility there," but continued, "[a]nd even though you had these problems, you know, *you somewhat abdicated your responsibility.*" (Emphasis added). Kane did not "somewhat abdicate" her responsibility to her daughter, Kane totally abdicated her parental responsibility.

The district clearly erred by substantially basing Kane's unusually lenient sentence on these unsupported determinations and procedurally abused its discretion.

C.    **Kane's Post-Sentence Rehabilitation**

The government argues the district court improperly considered Kane's post-sentence rehabilitation in granting the 90-month downward variance. We agree. The district court declared, "And I'm also looking at your efforts at rehabilitation. And I think you're doing an admirable job. And so I want to encourage you to continue in that vein."

We recently reaffirmed our circuit precedent that "evidence of [a defendant]'s post-sentence rehabilitation is not relevant and will not be permitted at resentencing because the district court could not have considered that evidence at the time of the original sentencing." Pepper, 518 F.3d at 953 (quoting United States v. Pepper, 486 F.3d 408, 413 (8th Cir. 2007), vacated, 128 S. Ct. 871 (2008) (in turn quoting United States v. Jenners, 473 F.3d 894, 899 (8th Cir. 2007))). See also United States v. Sims, 174 F.3d 911, 913 (8th Cir. 1999) (reasoning even though the district court may consider "a defendant's rehabilitative efforts up to the time of the original sentencing, . . . [r]ehabilitation that takes place behind the prison walls after the original sentencing is not relevant, since the sentencing court obviously could not have considered it at the time of the original sentencing") (internal citation omitted)). In Pepper, we explained, "allowing [post-sentence rehabilitation] evidence to influence

[a defendant]'s sentence would be grossly unfair to the vast majority of defendants who receive no sentencing-court review of any positive post-sentencing rehabilitative efforts." Pepper, 518 F.3d at 953 (quoting United States v. McMannus, 496 F.3d 846, 852 n.4 (8th Cir. 2007)). We concluded, "Gall does not alter our circuit precedent . . . that post-sentence rehabilitation is an impermissible factor to consider in granting a downward variance." Id. In determining Kane's sentence, the district court apparently gave significant weight to Kane's post-sentence rehabilitation efforts. The district court procedurally abused its discretion by relying on this irrelevant factor to justify the dramatic downward variance in Kane's case.

### D. Seriousness of Kane's Offense

The government also contends the district court erred by failing to consider a relevant factor in determining Kane's sentence—"the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" as outlined in 18 U.S.C. § 3553(a)(2)(A). In Kane II, we concluded "the district court failed to sufficiently consider the seriousness of the offense," observing, "[t]he facts in this case are no less than horrifying and do not support a downward variance of 90 months from the low-end of the advisory Guidelines range." Kane II, 470 F.3d at 1280.

Gall now makes clear that, while the district court is required to consider the relevant § 3553(a) factors, the district court has wide discretion to weigh the factors in each case and assign some factors greater weight than others in deciding whether "the § 3553(a) factors, on a whole, justify the extent of the variance." Gall, 128 S. Ct. at 597. Further, we have repeatedly recognized "the district court is not required to provide a mechanical recitation of the § 3553(a) factors when determining a sentence." United States v. Little Hawk, 449 F.3d 837, 840 (8th Cir. 2006) (citing United States v. Cadenas, 445 F.3d 1091, 1094 (8th Cir. 2006)); accord Kane II, 470 F.3d at 1280 (citing United States v. Lamoreaux, 422 F.3d 750, 756 (8th Cir. 2005)). "Rather, it simply must be clear from the record that the district court actually

considered the § 3553(a) factors in determining the sentence." <u>Little Hawk</u>, 449 F.3d at 840.  <u>See</u> <u>also</u> <u>Rita v. United States</u>, 127 S. Ct. 2456, 2468-69 (2007).

At sentencing, the government addressed the seriousness of Kane's offense and the need for Kane's sentence to provide just punishment, stating:

> [Calling Champion a] predator, Your Honor, is probably an understatement.  Trying to force himself into a nine-year-old girl.  Save for the mother that holds the girl down while this happens.  This is a despicable crime.  The mother told her to stop crying, told her she would send her into foster care, told her she would beat her if she didn't let this continue, and told her to clean up the resulting mess.  The government respectfully suggests that a downward variance in this case would not amount to just punishment.

After Kane's counsel argued for a downward variance without mentioning Kane's conduct, the district court specifically asked Kane's counsel if he had anything to say about the facts brought up by the government or the egregiousness of Kane's conduct.  These statements in the record are sufficient to indicate the district court considered the seriousness of Kane's offense, even though the district court made no reference to the underlying facts of the case or the seriousness of Kane's conduct in explaining Kane's sentence.  Following <u>Gall</u>, we cannot conclude the district court procedurally abused its discretion by failing to consider a relevant § 3553(a) factor.

### E.    Sentencing Disparity

The government contends the district court erroneously determined Champion was more culpable than Kane, and thus, Kane deserved a lesser sentence.  At Kane's sentencing, the district court reasoned, "I still believe that the most culpable person in this case was your co-defendant, Mr. Champion," "as I said in terms of the two individuals, yourself and Mr. Champion, I think he was by far the worst.  I think it's terrible when anybody takes advantage of lesser persons," and, "as far as the

sentencing disparity, I think that Mr. Champion is far more culpable because, see, he had to think and plot as to who, you know, can I run my program on."

In determining an appropriate sentence, a district court considers "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" 18 U.S.C. § 3553(a)(6). In <u>Kane II</u>, we concluded Kane's unusually lenient sentence, not Champion's sentence, reflected an unwarranted sentencing disparity.[1]  <u>Kane II</u>, 470 F.3d at 1281-82.  We observed "[i]t is difficult to determine who is more culpable—Champion, a child predator, or Kane, a mother who repeatedly sold her nine-year-old daughter for $20 to gratify the sexual pleasures of a child predator."  <u>Id.</u> at 1281.  Although one could argue Kane and Champion are not similarly situated, and our assessment of their comparability would be different, viewed through the lens of <u>Gall</u>, we now conclude the district court acted within its broad discretion in resolving this conundrum in Kane's favor.

<u>Gall</u> also requires a district judge not only to consider the § 3553(a) factors, but also to "explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications."  <u>Gall</u>, 128 S. Ct. at 594.  <u>Gall</u> specifically recognizes "failing to adequately explain the chosen sentence" constitutes "significant procedural error."  <u>Id.</u> at 597.  There is no doubt Kane's sentence constitutes an "unusually lenient sentence" as contemplated by <u>Gall</u>. Kane's advisory Guidelines calculation resulted in a base offense level of 37, criminal history category I, with a Guidelines range of 210 to 262 months.  Kane's base offense level of 37 was three levels higher than Champion's because, unlike Champion, Kane did not accept responsibility for her conduct, instead challenging her guilt at trial. Kane's 120-month sentence amounts not only to a 90-month downward variance from

---

[1]Champion accepted responsibility for his crimes and testified at Kane's trial, resulting in a three-level reduction in Champion's base offense level.  With a base offense level of 34 and a criminal history category I, Champion's Guidelines range was 151 to 188 months.  Champion was sentenced to 180 months.

the bottom of Kane's own advisory Guidelines range, but also to a 31-month downward variance from the bottom of Champion's advisory Guidelines range. Other than stating, "I think it's terrible when anybody takes advantage of lesser persons," and "[Champion] had to think and plot as to who, you know, can I run my program on,"[2] the district court provided no further insight into the reasons for its determination Kane deserved a 90-month downward variance because Champion was more culpable. Though it was within the district court's discretion to determine Champion was more culpable than Kane, Champion's greater culpability in the abstract is not, by itself, a sufficient justification for the extent of Kane's unusually lenient sentence. Thus, the district court committed procedural error by failing adequately to explain the chosen sentence and failing to support the degree of variance with sufficient justifications.

###    F.    Substantive Reasonableness

Given the horrifying nature of Kane's conduct, the fact Kane repeated her offense against her daughter over 200 times, and Kane's refusal to accept responsibility for her role in her daughter's abuse, we have serious concerns about the substantive reasonableness of Kane's 120-month sentence. We doubt the district court's remaining "justification is sufficiently compelling to support the degree of the variance" for the district court's deviation below the Guidelines range. Gall, 128 S. Ct. at 597. However, because the district court procedurally erred by substantially basing Kane's sentence on clearly erroneous factual findings, relying on Kane's post-sentence rehabilitation, and otherwise failing adequately to explain Kane's unusually lenient sentence with sufficient justifications, we do not reach the issue of whether Kane's sentence was substantively reasonable. See id. at 594, 597 ("Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an

---

[2]As discussed above, the record contains no support for the theory Kane committed her crimes because she was susceptible to, or influenced by, Champion.

abuse of discretion standard.")  See also Pepper, 518 F.3d at 953 (declining to reach the substantive reasonableness of a sentence where the district court committed procedural error).

## III.  CONCLUSION

We again vacate Kane's sentence and remand for resentencing.

_____