# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1191

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Jason Pepper, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 14, 2009
Filed: July 2, 2009

_____

Before RILEY, SMITH, and COLLOTON, Circuit Judges.

_____

RILEY, Circuit Judge.

At issue in this appeal is whether the district court[1] exceeded the scope of our court's remand, committed procedural error, and abused its discretion in resentencing Jason Pepper (Pepper). This is the fourth time our court has considered Pepper's case. See United States v. Pepper, 518 F.3d 949 (8th Cir. 2008) (Pepper III), cert. denied, 129 S. Ct. 138 (2008); United States v. Pepper, 486 F.3d 408 (8th Cir. 2007) (Pepper II), vacated, 128 S. Ct. 871 (2008); United States v. Pepper, 412 F.3d 995 (8th Cir.

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

2005) (Pepper I).  We have remanded the case for resentencing three times, and Pepper has been resentenced by two different district court judges after pleading guilty to conspiracy to distribute methamphetamine.  Having carefully reviewed the record, we now affirm the sentence and judgment of the district court.

## I.    BACKGROUND

On October 22, 2003, Pepper was charged with conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  Pepper pled guilty to the charge pursuant to a plea agreement.  Based on Pepper's total offense level of 30 and criminal history category I, Pepper's advisory United States Sentencing Guidelines (Guidelines or U.S.S.G.) range was 97 to 121 months imprisonment.  Although the charge to which Pepper pled guilty carried a mandatory minimum sentence of 120 months imprisonment, the mandatory minimum did not apply because Pepper was eligible for safety-valve relief pursuant to 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2.

The government filed a motion for a downward departure, pursuant to U.S.S.G. § 5K1.1, based on Pepper's substantial assistance, and recommended a 15% downward departure.  The district court judge assigned to Pepper's case at the time sentenced Pepper to 24 months imprisonment, resulting in an approximately 75% downward departure from the low end of Pepper's advisory Guidelines range, and 5 years supervised release.  The district court explained it arrived at the sentence of 24 months imprisonment because this was the minimum sentence Pepper could receive and still be eligible for the drug treatment program at the federal prison in Yankton, South Dakota.

The government appealed, and we reversed and remanded for resentencing, holding the district court erred by considering a matter unrelated to Pepper's assistance in granting the downward departure, "namely its desire to sentence Mr. Pepper to the shortest possible term of imprisonment that would allow him to

participate in the intensive drug treatment program at the federal prison in Yankton."
See Pepper I, 412 F.3d at 999. We also reasoned, "given the pedestrian nature of Mr. Pepper's assistance, it is far from certain that the district court would have arrived at the same guidelines sentence had it considered only assistance-related elements." Id.

On remand, the district court again sentenced Pepper to 24 months imprisonment. The district court arrived at this sentence by first granting a 40% downward departure based on Pepper's substantial assistance, bringing the bottom of Pepper's advisory Guidelines range to 58 months. The district court then granted a downward variance from the 58 months to a sentence of 24 months imprisonment. The downward variance was based on Pepper's lack of a history of violence, the disparity in sentences between Pepper and his co-defendants, and Pepper's post-sentencing rehabilitation.

The government appealed this sentence, and we again reversed and remanded for resentencing. See Pepper II, 486 F.3d at 410, 413. We concluded that, while it was "a close call, we [could not] say the district court abused its discretion by the extent of the [U.S.S.G.] § 5K1.1 departure." Id. at 411. However, we held the district court abused its discretion in granting the downward variance because the district court considered improper factors, namely Pepper's post-sentencing rehabilitation, his lack of a history of violence, and the disparity in sentences among Pepper and his co-defendants "without adequate foundation and explanation." Id. at 413. Based on statements the district court made during Pepper's resentencing hearing, expressing a reluctance to resentence Pepper should the case again be remanded, we remanded the case for reassignment and resentencing by a different district court judge. Id.

In the district court, Pepper's case was reassigned. On July 18, 2007, after giving the parties an opportunity to file briefs, the new district court judge issued an order on the scope of the remand (Remand Order), declaring, "The court will not consider itself bound to reduce [Pepper's] advisory Sentencing Guidelines range by

40% pursuant to U.S.S.G. § 5K1.1." The district court also informed the parties, in determining the appropriate downward departure pursuant to U.S.S.G. § 5K1.1, it would not consider any evidence of substantial assistance Pepper provided after Pepper's first resentencing.

In the meantime, Pepper petitioned the Supreme Court for writ of certiorari, and the Supreme Court granted the petition on January 7, 2008, vacating Pepper II and remanding the case to our court for further consideration in light of Gall v. United States, 552 U.S. 38 (2007). See Pepper v. United States, 128 S. Ct. 871 (2008) (mem.). In Pepper III, we "considered Gall's impact on Pepper's case," and we again reversed the sentence and remanded for resentencing before a different district court judge. Pepper III, 518 F.3d at 950.

Pepper's case was again reassigned. The district court convened a resentencing hearing on October 17, 2008, at which time the parties presented witness testimony and other evidence, and counsel made arguments. The district court informed the parties, due to the extensive procedural history in Pepper's case, the district court intended to consider the arguments and evidence, issue a sentencing memorandum, and sentence Pepper at a later date.

On December 22, 2008, the district court issued a twenty-seven page sealed sentencing memorandum (Sentencing Memorandum). The district court noted the remand language of Pepper III was nearly identical to the language in Pepper II, and for the reasons stated in the earlier Remand Order, the district court again determined it was not "bound to reduce [Pepper's] advisory Sentencing Guidelines range by 40% for substantial assistance pursuant to [U.S.S.G. § 5K1.1]." The district court determined Pepper was entitled to a 20% downward departure for his substantial assistance. The district court next considered Pepper's request for a downward variance pursuant to 18 U.S.C. § 3553(a) based upon Pepper's characteristics and history, post-offense and post-sentencing rehabilitation, the disparity in sentences

among Pepper and his co-defendants, and the cost of Pepper's incarceration. After considering the 18 U.S.C. § 3553(a) factors and Pepper's arguments, the district court denied Pepper's motion for a downward variance.

On January 5, 2009, the district court reconvened Pepper's resentencing hearing to impose a sentence. Based on the district court's decision to grant a 20% downward departure pursuant to U.S.S.G. § 5K1.1, Pepper's advisory Guidelines range was 77 to 97 months. The district court sentenced Pepper to 77 months imprisonment and 12 months supervised release. Thereafter, the district court granted the government's January 2, 2009, Rule 35(b) motion to reduce Pepper's sentence further for the assistance Pepper provided after he was initially sentenced, reducing Pepper's sentence to 65 months imprisonment. Pepper's appeal followed.

## II.    DISCUSSION
### A.    Standard of Review

"We review all sentences, whether inside or outside the Guidelines range, under a deferential abuse of discretion standard." Pepper III, 518 F.3d at 951, cert. denied, 129 S. Ct. 138 (2008) (citing Gall, 128 S. Ct. at 597). We "must first ensure that the district court committed no significant procedural error." Gall, 128 S. Ct. at 597. Examples of procedural error include: "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Id. If we find "the district court's sentencing decision is procedurally sound, [we] then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Id. "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." Id.

**B.     Downward Departure**

**1.     Scope of Our Remand for Resentencing**

Pepper first argues "[t]he scope of the remand and law of the case from <u>Pepper II</u> and <u>Pepper III</u> required [the district court] to reduce Pepper's advisory [Guidelines] range by at least 40% pursuant to U.S.S.G. § 5K1.1." The government disagrees and contends the law of the case doctrine does not apply because our court did not place any limitation upon the district court's discretion in resentencing Pepper.

"On remand for resentencing, all issues decided by the appellate court become the law of the case, and the sentencing court is bound to proceed within the scope of any limitations imposed . . . by the appellate court." <u>United States v. Curtis</u>, 336 F.3d 666, 669 (8th Cir. 2003) (internal quotations and citations omitted). "Under the law of the case doctrine, a district court must follow our mandate, and we retain the authority to decide whether the district court scrupulously and fully carried out our mandate's terms." <u>Jaramillo v. Burkhart</u>, 59 F.3d 78, 80 (8th Cir. 1995) (citation omitted). "Ultimately, the scope of a remand must be determined by reference to the analysis contained in the opinion." <u>United States v. Kendall</u>, 475 F.3d 961, 964 (8th Cir. 2007) (citing <u>United States v. Santonelli</u>, 128 F.3d 1233, 1237 (8th Cir. 1997)). When we decide to remand a case for resentencing, we have two options: (1) we may remand the case with instructions limiting the scope of the district court's discretion, or (2) we may remand without placing any limitations on the district court's discretion. <u>See</u> <u>id.</u> at 964.

We used the following remand language in the conclusion of <u>Pepper III</u>: "For the foregoing reasons, we again reverse and remand Pepper's case for resentencing consistent with this opinion. As the district court expressed a reluctance to resentence Pepper again should the case be remanded, we again remand this case for resentencing by a different judge." <u>Pepper III</u>, 518 F.3d at 953. <u>Pepper III</u>'s remand language is nearly identical to the remand language in <u>Pepper II</u>. <u>See</u> <u>Pepper II</u>, 486 F.3d at 413 ("For the reasons stated, we reverse and remand this case for resentencing consistent

-6-

with this opinion. The district court expressed a reluctance to resentence Pepper again should this case be remanded. Thus, we remand Pepper's case for re-sentencing by a different judge.").

In the district court's Remand Order, which was reaffirmed by the district court in the Sentencing Order, the district court explained, "The only specific restrictions on the court's decision on remand were (1) the second resentencing hearing should take place before a different judge and (2) such judge's decision should be 'consistent with [*Pepper II*].'" The district court observed that while our court "indicated that a 40% downward departure was not an abuse of discretion[,]" we did not "hold that a 40% downward departure [wa]s the only reasonable outcome for [Pepper] or that the [district] court must impose a 40% downward departure on remand pursuant to USSG §5K1.1."

We agree with the reasoning of the district court. Our remand was a general remand for resentencing. Our opinions in Pepper II and Pepper III did not place any limitations on the discretion of the newly assigned district court judge in resentencing Pepper. We did not specify the district court's discretion would be restricted to considering whether a downward variance was warranted, nor did we specify the district court would be bound by the 40% downward departure previously granted. We concluded a 40% downward departure was not an abuse of discretion. In other words, a 40% downward departure was within the range of reasonableness.[2] Under the circumstances of Pepper's case, a complete resentencing without any restrictions on the district court's discretion was preferable, in contrast to a partial, piecemeal

---

[2]The language we used in Pepper II suggested a 40% departure was at the outer boundary of the range of reasonableness. See Pepper II, 486 F.3d at 411 (declaring it was "a close call" whether the district court "abused its discretion by the extent of the § 5K1.1 departure"). In our original decision, we referred to "the pedestrian nature of Mr. Pepper's assistance." Pepper I, 412 F.3d at 999.

resentencing limiting the sentencing judge's discretion. We conclude neither the scope of our remand, nor the law of the case doctrine, required the district court to grant Pepper a 40% downward departure for substantial assistance.

### 2. Extent of the Downward Departure

We turn to Pepper's next argument that the district court abused its discretion by refusing to depart downward by more than 20% based on Pepper's substantial assistance. We dispose of this argument easily. "[T]he extent of a downward departure in the defendant's favor lies within the district court's discretion and is virtually unreviewable on a defendant's appeal, absent an unconstitutional motive animating the district court." United States v. Dalton, 478 F.3d 879, 881 (8th Cir. 2007). As Pepper has not asserted an unconstitutional motive played a role in the district court's decision, we lack jurisdiction to review the extent of the departure. See United States v. McFarlane, 309 F.3d 510, 512 (8th Cir. 2002) (citing United States v. DeBuse, 289 F.3d 1072, 1075 (8th Cir. 2002) (noting, we "lack[] jurisdiction to review the extent of the district court's downward departure" unless the defendant asserts a violation of constitutional or federal statutory law). We affirm the district court's judgment with respect to the extent of the downward departure.

### C. Downward Variance

Pepper next challenges the district court's denial of his motion for a downward variance. Pepper argues the district court abused its discretion in refusing to consider Pepper's post-sentencing rehabilitation and the cost of his incarceration as bases for varying downward under 18 U.S.C. § 3553(a).[3]

---

[3]Under 18 U.S.C. § 3553(a), a district court is to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
  (A) to reflect the seriousness of the offense, to promote respect for

## 1.    Post-Sentencing Rehabilitation

While Pepper acknowledges our court explicitly has stated that post-sentencing rehabilitation is not a permissible factor to consider in granting a downward variance, and that the district court was merely following our precedent in refusing to consider this factor, Pepper nevertheless suggests, under the unique circumstances of his case, post-sentencing rehabilitation is an appropriate consideration.  Pepper urges us to consider the fact Pepper's rehabilitation began before Pepper "realized his 24 month sentence of imprisonment and five years of supervised release would turn into a 65 month term of imprisonment and one year of supervised release."

We agree Pepper made significant progress during and following his initial period of imprisonment.  While in prison, Pepper completed a 500-hour drug treatment program.  Three days after we issued our opinion in Pepper I, Pepper completed his term of imprisonment on June 27, 2005, and began serving his term of supervised release.  Pepper enrolled at Western Iowa Tech Community College.  In 2007, Pepper married and became a stepfather to his wife's daughter.  At the time of his second resentencing in October 2008, Pepper was working as a supervisor of the night crew at Sam's Club and attending school in Illinois.

---

the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range . . . ;
(5) any pertinent policy statement . . . [;]
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

We commend Pepper on the positive changes he has made in his life. However, the law of our circuit is clear. "[E]vidence of [a defendant]'s post-sentence rehabilitation is not relevant and will not be permitted at resentencing because the district court could not have considered that evidence at the time of the original sentencing." Pepper III, 518 F.3d at 953 (internal quotation marks omitted) (quoting Pepper II, 486 F.3d at 413 (in turn quoting United States v. Jenners, 473 F.3d 894, 899 (8th Cir. 2007))). See also United States v. McMannus, 496 F.3d 846, 852 n.4 (8th Cir. 2007) ("While it is difficult not to be swayed by [defendant's] post-sentencing rehabilitation successes, allowing this evidence to influence his sentence would be grossly unfair to the vast majority of defendants who receive no sentencing-court review of any positive post-sentencing rehabilitative efforts."). "'This panel is bound by Eighth Circuit precedent, and cannot overrule an earlier decision by another panel.'" United States v. Lovelace, 565 F.3d 1080,1085 (8th Cir. 2009) (quoting Passmore v. Astrue, 533 F.3d 658, 660 (8th Cir. 2008)).

### 2.    Cost of Incarceration

Finally, Pepper contends the district court abused its discretion in refusing to consider the cost of incarceration as a basis for varying downward. In the Sentencing Memorandum, the district court cited as support for its decision our prior opinions in United States v. Collins, No. 98-3765, 1999 WL 1143677, at *1 (8th Cir. Dec. 2, 1999) (unpublished) (determining, "the economic costs of incarcerating [the defendant] is not a factor which the Court should have considered as a basis for departure"), and United States v. Wong, 127 F.3d 725, 728 (8th Cir. 1997) (explaining, "[t]he decision whether tax dollars should be used to pay for lengthy sentences is a congressional determination, not one to be made by federal courts[,]" and "[t]he Sentencing Guidelines do not mention the expenses of imprisonment as a factor a court may use in deciding whether to depart from the Guidelines"). The district court then opined, even if the cost of incarceration were an appropriate consideration under Eighth Circuit precedent, the district court did "not believe the

cost of incarceration fits with any of the factors listed for imposing sentence under 18 U.S.C. § 3553(a)."

We agree with the reasoning of the district court, and this view was shared by another panel of our court in a recent opinion.  See United States v. Molina, 563 F.3d 676, 678 (8th Cir. 2009) (citations omitted) ("Although sentencing courts are required to consider the sentencing factors set out in 18 U.S.C. § 3553(a), the cost of imprisonment is not among them.  Thus, we doubt that sentencing courts have the authority to impose lesser sentences based on the cost of imprisonment.").  See also United States v. Tapia-Romero, 523 F.3d 1125, 1127 (9th Cir. 2008) (concluding, "§ 3553(a) neither requires, nor allows, a court to consider the cost of imprisonment in determining the appropriate length of a defendant's term of imprisonment").  The district court did not abuse its discretion in refusing to consider the cost of Pepper's incarceration as a basis for varying downward.

Further, "giv[ing] due deference to the district court's decision that the § 3553(a) factors, on a whole, justify" Pepper's sentence, Gall, 128 S. Ct. at 597, our review of Pepper's sentence reveals no abuse of the district court's considerable discretion and no basis for concluding Pepper's sentence is substantively unreasonable.

## III.  CONCLUSION

We affirm Pepper's sentence and the judgment of the district court.

_____