# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1103

_____

United States of America,        *
                                    *

        Appellant,           *

                                        *       On remand for reconsideration

     v.                        *       from the Supreme Court

                                        *       of the United States.

Ruth Kane,                  *

                                      *

        Appellee.           *

_____

Submitted: April 18, 2011
Filed: April 29, 2011

_____

Before RILEY, Chief Judge, HANSEN and MURPHY, Circuit Judges.

_____

RILEY, Chief Judge.

For $20, Ruth Kane repeatedly restrained her nine-year-old daughter (the child)[1] while a pedophile molested and raped the child. Kane did so approximately twice a week for a total of more than 200 sexual molestations. After a jury found Kane guilty of various federal sex crimes, the district court sentenced Kane to 120 months in prison. We held Kane's sentence was unreasonable and reversed. The Supreme Court

_____

[1]We refer to Kane's daughter as "the child" to safeguard her identity. The district court found that disclosing the child's identity would be "rather detrimental" to the child and also partially closed the courtroom during the child's testimony to avoid "substantial psychological harm to the child." See 18 U.S.C. § 3509.

now asks us to reconsider our holding in light of an intervening decision, Pepper v. United States, 562 U.S. ___, 131 S. Ct. 1229 (2011). Having considered Pepper's impact on Kane's sentence, we again reverse and remand for resentencing.

## I.    BACKGROUND[2]

### A.    Facts

Kane gave birth to the child in early 1987. The child grew up in St. Louis, Missouri, with Kane and with Kane's live-in boyfriend James Grote[3] and two younger siblings.

In the early 1990s, Kane befriended a 300-pound pedophile, Joe Champion. Champion was born in 1948 and lived in Granite City, Illinois. An alcoholic, Champion typically drank as much as a case of beer a day. Champion later served time in federal prison for possession of child pornography.[4]

Acquaintances described Champion as "like Santa Claus," but "strange" and "weird." Champion "played with all the kids in the neighborhood," including "tag" and "guessing games," and would take the children for rides on his Harley Davidson

---

[2]We recite the evidence in the light most favorable to the jury's verdicts and the district court's relevant conduct findings, setting forth this case's background in greater detail than in our previous decisions. See Zebley v. Heartland Indus. of Dawson, Inc., 625 F.3d 449, 451 n.2 (8th Cir. 2010). A comprehensive understanding of the case is essential to understanding why we hold Kane's sentence is unreasonable. See United States v. Canania, 532 F.3d 764, 773 (8th Cir. 2008).

[3]The child referred to Grote as "stepdad." Kane and Grote were unmarried. Kane and the child's father separated in 1991, but never divorced.

[4]Champion was convicted and sentenced for possession of child pornography in the United States District Court for the Southern District of Illinois in 1999, after the over 200 sexual molestations giving rise to this appeal.

motorcycle.  Champion gave the children presents, including soda, candy, and toys. Champion supplied the adults with "lots of beer."

In 1995, Christina Totten, one of Kane's acquaintances, witnessed a "disturbing" incident involving the child, Kane, and Champion.  Totten watched as Champion "twisted . . . [the child's] wrist" to force the child to sit on his knee.  The child was "very frightened" and, when Champion finally released his grip, the child was left "shaking" with fear.  Kane was present but did not help her daughter.

The next day, Totten asked the child if Champion was "touching you and it makes you feel bad or you don't feel right or you're scared."  The child said Champion "was messing with me," "pointed to her crotch area," and began to cry. The child also remarked, "I don't want my mommy to get mad at me, he gives her money so that we can eat."  Kane who was present interjected, "[B]aby, you know he wouldn't hurt you."

Totten twice reported Kane and Champion to the local department of human services' child abuse hotline. The authorities accused Totten of lying and did nothing to protect the child.

Champion asked Kane for permission to sexually molest her daughter.  Kane agreed.  Champion sexually molested the child with Kane's assistance approximately twice a week for more than 200 molestations.  After ensuring the child's siblings were outside, Kane held her daughter on her lap, pinning the child down with Kane's arm in the child's back.  As the child cried, Champion would then rub his penis against the child's vagina and ejaculate on the child's stomach.  Kane would clean up the ejaculate.  Champion paid Kane $20—sometimes in the child's presence—for the privilege.

At trial, the child recalled in vivid detail the first time Champion sexually molested her. It was a warm spring day, and the child was playing outside with her siblings. Kane called the child inside the family home. Champion, who was sitting at the kitchen table, went into a first-floor bathroom. Kane was posted at the bathroom door. The child "had a creepy feeling" and tried to run away. Kane pulled the child into the bathroom and ordered her to undress. Kane then sat on the toilet and pinned her nude daughter down onto Kane's lap.

Champion removed his suspenders and pants, grabbed Vaseline out of a medicine cabinet, and approached Kane's daughter with his penis in hand. The child's last memory before fainting was the pain of Champion's penis pressing on her vagina. After ejaculating, Champion returned to the kitchen, drank a couple of beers, and left.[5]

When the child awoke, she was on the bathroom floor with blood on the inside of her thigh. As the child began to cry, Kane "stuck her head through the door and told [the child] to clean up the mess." The child obeyed and went to her room.

One day when it was raining outside and the child's siblings could not go outside to play, Champion sexually molested the child in Kane's bed. Kane guarded the door as Champion rubbed his penis against the child's vagina and ejaculated on the child's stomach. Kane only left her post to grab a towel and wipe Champion's ejaculate off her daughter's stomach.

Sometimes the molestations took place at Champion's home in Granite City. Again, Kane actively participated. Kane would strip off the child's pants and then lay down on a bed next to the child as Champion sexually molested the child. On one

---

[5]Champion described the child as not crying, but rather having "a disappointing look . . . on her face." Champion has memory problems and, although he does not remember molesting the child over 200 times, recalls "the pleasurable feeling moments."

occasion, Kane asked Champion to drive the child to a relative's house in Illinois. Instead, Champion took the child to his home and molested her.

The child endured other abuse. Once Champion spontaneously reached under the kitchen table in the child's home and touched the child's vagina. Shortly thereafter, while at a restaurant with Kane and one of Kane's friends, the child told Kane she "had to tell her something." Kane responded, "anything [the child] could say in front of [Kane], [the child] could say in front of [the friend]." The child revealed, "[Champion] touched me under the table." Kane "[a]cted like she had no idea that ever happened and said [Champion] was never allowed at her house."

The sexual abuse ended in approximately late 1997. Champion testified he stopped paying Kane to help him sexually molest the child because, "I just decided to stop." The child later began mutilating herself and moved in with her father in Illinois.

For almost five years, the child largely kept the sexual abuse secret, which, as an expert witness testified at trial, is common for young victims. In September 2002, when the child was fifteen, she was watching a "Lifetime for Women" movie about a little girl who was sexually molested by her grandfather. At the end of the movie, the television channel ran a public service announcement, which included a telephone number that victims could call for help. The child called the number.

An organization, "Call for Help," set up an appointment with the Granite City (Illinois) Police Department (GCPD). The GCPD was "very interested" in Champion, who later admitted in an interview that he had paid Kane for permission to sexually molest the child. The GCPD took no action against Kane.

Persistent in her efforts for justice and protection, the child enlisted the help of the Child Advocacy Center of St. Louis. In January 2003, the Federal Bureau of

Investigation (FBI) began investigating Kane and Champion. What followed was a series of lies and half-truths by Kane, apparently designed to cover up the child's abuse.[6]

During a post-arrest interview in March 2003, Kane told law enforcement officers she was "aware that there was an allegation that she had been accepting money from people to allow them to touch [the child]" and admitted the child had told Kane that Champion had sexually molested the child. But Kane "denied she was ever aware that [the child] was ever molested" or "accepted money . . . in exchange for allowing the molestation to take place."

After law enforcement officers confronted Kane with Champion's confession to the GCPD, Kane "admitted that she had made some mistakes with [the child,]" but continued to deny involvement in any sexual abuse of her daughter. Later, Kane admitted "Champion had said to her that he had been touching [the child's] vagina, and that he wanted [the child] to touch his penis." Kane admitted she continued to allow Champion to visit after Champion had told her these things and knew "she should have protected [the child] better and she failed to do so."

After further questioning, Kane admitted, when the child was ten or eleven years old, "she and Joe Champion took [the child] upstairs to her bedroom . . . . She ordered [the child] to disrobe," and for $40 stood in the doorway while "Champion knelt before her and touched her bare vagina with his hand." Kane said the child was crying as Champion sexually molested her.

_____

[6]Kane later recanted some of her half-truths, and, at trial, attempted to portray the child as a liar.

## B.      Prior Proceedings
### 1.      Original District Court Proceedings

In April 2003, a grand jury returned a twelve-count indictment against Kane and Champion. Only Counts 1 and 6 are relevant here.[7] Count 1 charged Kane and Champion with conspiracy to commit aggravated sexual abuse, in violation of 18 U.S.C. § 371 and § 2241(c). The grand jury alleged that, from about May 1996 to December 1997, Champion "would pay Kane money for the right to engage in sexual activity with [the child]." Count 6 charged Kane and Champion with aggravated sexual abuse and aiding and abetting aggravated sexual abuse, in violation of 18 U.S.C. § 2241(c) and § 2. Count 6 alleged that, on or about June 1, 1997, Champion traveled to Kane's home and paid Kane to allow him to sexually molest the child.

In July 2003, Champion pled guilty to Counts 1 and 6. Champion agreed to testify against Kane in exchange for the government's promise not to seek an upward departure at Champion's sentencing.

In November 2003, the district court presided over a four-day jury trial. At trial, Kane suggested she was also a "victim" and that her situation was a "tragedy," arguing the child was a liar and labeling the child's sworn account of events "fiction." The jury disagreed, finding Kane guilty of Counts 1 and 6. The United States Probation Office (USPO) prepared presentence investigation reports (PSR) for Kane

---

[7]Counts 2-5 and 7-11 alleged Kane and Champion violated 18 U.S.C. § 2241(c) on a series of discrete dates in 1996 and 1997 by "knowingly cross[ing] a state line with the intent to engage in a sexual act . . . [with] a person who at that time had not attained the age of 12 years." Count 12 alleged Champion violated 18 U.S.C. § 2243(a) in 1997. As part of Champion's plea agreement, the government agreed to dismiss Counts 2-5 and 7-12 as to Champion. The government voluntarily dismissed Counts 2-5 as to Kane, because the relevant portion of § 2241(c) became effective after the alleged conduct occurred. See Amber Hagerman Child Protection Act of 1996, Pub. L. No. 104-208, 110 Stat. 3610, 3009-31 (effective Sept. 30, 1996). The jury acquitted Kane of Counts 7-11.

and Champion based on the then-mandatory United States Sentencing Guidelines (U.S.S.G. or Guidelines).[8]

In Champion's PSR, the USPO calculated a total offense level of 37 and a criminal history category I. After a three-level reduction for acceptance of responsibility, see U.S.S.G. § 3E1.1, the USPO figured Champion's Guidelines range was 151 to 188 months.

In Kane's PSR, the USPO calculated a total offense level of 37,[9] but did not recommend a reduction for acceptance of responsibility because, unlike Champion, Kane contested her guilt and did not cooperate with the government. The USPO determined Kane had a criminal history category II on account of her prior convictions for resisting a police officer and drunk driving. The USPO recommended the district court find Kane's Guidelines range to be 235 to 293 months, but identified a number of factors possibly warranting an upward departure. Specifically, the USPO indicated the Guidelines might fail to account for (1) "the duration and extent of the abuse," see U.S.S.G. § 5K2.0; (2) the fact that "Champion abused the child while her mother held her down and then suffered the humiliation of watching Champion pay her mother for the abuse on each occasion," see id.; (3) "[t]he abuse of the defendant's responsibility as a mother to protect her child from sexual predators," see id.; and (4) the fact the child "was physically restrained by her mother so [Champion] could sexually molest her," see § 5K2.4. The USPO recommended the district court order Kane to make restitution, because the child "has been involved in counseling periodically and may be able to benefit from future counseling services."

_____

[8]All references here are to the 2002 edition of the Guidelines.

[9]Kane's base offense level was 27, see U.S.S.G. § 2A3.1(a), with a four-level increase for use of means set forth in 18 U.S.C. § 2241(a), see U.S.S.G. § 2A3.1(b)(1), a four-level increase because the child was under the age of twelve, see U.S.S.G. § 2A3.1(b)(2), and a two-level increase because the child was in the care, custody, or supervisory control of the defendant, see U.S.S.G. § 2A3.1(b)(3)(A).

In December 2003, the district court sentenced Champion to 180 months in prison, near the top of his Guidelines range. Champion did not appeal.

At her sentencing in February 2004, Kane moved for a downward departure based on an allegedly over-represented criminal history, see U.S.S.G. § 4A1.3, as well as for a number of other reasons.[10] The district court granted Kane's motion in part and reduced Kane's criminal history category to I. Kane's resultant Guidelines range was 210 to 262 months imprisonment. After expressing dissatisfaction with the then-mandatory Guidelines and its narrow grounds for departure, the district court sentenced Kane to 210 months imprisonment, the bottom of her Guidelines range.

In discussing Kane's sentence, the district court found Champion "was the worst actor with the planning and the premeditation and serious thinking about this," "the main actor here," and "the one that society needs protection from," but concluded Champion's "physical condition is such that I don't think that he'll be a further threat to society in terms of his condition and the time that he is going to serve." The district court also remarked "[t]he [G]uidelines are what they are, and so the Court has to sentence Ms. Kane appropriately within those [G]uidelines." The district court did not award the child restitution.

## 2. **Kane I**

In September 2005, we affirmed Kane's convictions, but vacated her sentence. See United States v. Kane, 148 F. App'x 565, 568 (8th Cir. 2005) (unpub. per curiam) (Kane I). We remanded for resentencing in light of United States v. Booker, 543 U.S. 220 (2005) (invalidating the mandatory provisions of the Guidelines), because the

---

[10]For example, Kane moved for a downward departure for "coercion and duress," see U.S.S.G. § 5K2.12, because the trial evidence purportedly "made clear . . . Champion in a campaign of coercion cunningly supplied alcohol and gifts . . . distract[ing Kane] from her parental duties."

district court plainly erred when it held the Guidelines were mandatory. See id. at 567-68. We reasoned,

> Although the district court did not explicitly say it preferred to give Kane a lower sentence, the court expressed concern about factors not relevant under the then-mandatory Guidelines. Specifically, the court believed Kane's use of alcohol and drugs made her susceptible to Champion's influence, but observed that Kane's sentence under the Guidelines was not subject to the court's individual judgment. The district court also believed that Kane was less culpable and presented less of a threat to society than Champion, who was sentenced by the court to 180 months imprisonment. When combined with the court's grant of a criminal-history downward departure, and its imposition of a sentence at the bottom of the Guidelines range, we conclude these statements give rise to a reasonable probability that the court would have sentenced Kane more favorably under an advisory Guidelines regime.

Id. at 567 (citations omitted). We said "the record . . . reveals the existence of facts . . . that could form 'a basis within the 18 U.S.C. § 3553(a) factors for the district court to impose a lower but still reasonable sentence under advisory Guidelines," but cautioned, "We express no opinion as to what a reasonable sentence would be, and nothing in this opinion should be construed as an indication that we think a more lenient sentence is warranted." Id. at 568.

### 3. Resentencing

In December 2005, the district court resentenced Kane to 120 months in prison. At the outset of the hearing, the district court told Kane, "You have an improved appearance I see, so it's apparent that there is something positive happening here." The district court then conveyed its estimation that, in light of Kane's prior drug and alcohol abuse, Kane was "like an accident wating to happen" for "predator individuals . . . [to] take advantage of." The district court found Champion was the "most culpable person in this case" and "was by far the worst." The district court compared Champion to an experienced tennis player "hitting a winner past a beginner."

-10-

The district court indicated Kane should learn a lesson from her convictions: namely, in the future, Kane should remember to "beware of somebody bringing gifts" and bear in mind that "[o]ne of the rules in life is nothing is free." The district court reasoned,

> You know, I used to talk to my son about, daddy, this is free, this is free. I'd say, listen, son, I have a master's degree in business administration, they call some of these in marketing a loss leader, just to get your happy so and so up in the joint because they know you're going to spend some mo' money. So they give you this, give you this, because they know they going to jack you up otherwise. Nothing is free. And as long as you understand that, you know, you got to pay for whatever you get one way or another. I think that this sentence is sufficient to serve public purposes, so there it is.

The district court indicated a ten-year prison sentence was necessary because Kane "somewhat abdicated [her] responsibility." The district court found Kane posed no danger to the public or any risk of recidivism. Apparently referring to the fact that Kane had earned her GED, taken 84 hours of parenting classes, and 624 hours of vocational training since her original sentencing, the district court found Kane's postsentencing rehabilitation weighed in favor of leniency. The district court closed Kane's resentencing hearing with the following observation:

> You look much better than you did before. You know, because here you are at your age, you were looking substantially older. You look better. Keep on going with your physical and mental care of yourself, okay. Good luck.

In sum, the district court indicated its reasons for varying 90 months downward from the bottom of Kane's Guidelines range were (1) Kane posed a low risk of recidivism; (2) Kane had a history of substance abuse and mental health issues; (3) Kane was vulnerable, and participated in her daughter's abuse because she was influenced by Champion; (4) Kane's post-sentencing rehabilitation; and (5) the district

court's belief that Champion, who received a 180-month sentence, was more culpable than Kane.

### 4. Kane II

The government appealed, arguing Kane's 120-month sentence was "not reasonable in light of the factors set forth in § 3553(a)." United States v. Kane, 470 F.3d 1277, 1280 (8th Cir. 2006) (Kane II). In December 2006, we vacated Kane's sentence a second time and remanded for another resentencing. Id. at 1282.

In reversing, we relied on the principle that "[t]he farther the district court varies from the advisory Guidelines range, the more compelling the justification based on the § 3553(a) factors should be." Id. at 1280. We then held Kane's 120-month sentence was "unreasonable" for six reasons: **(1)** there was no evidence to support the district court's finding Kane would not recidivate; **(2)** there was no evidence to support the district court's finding that Kane's mental health or drug abuse caused her crimes; **(3)** there was no evidence indicating Champion influenced Kane to commit her crimes; **(4)** a variance based on Kane's post-sentence rehabilitation efforts was inappropriate; **(5)** the district court failed sufficiently to consider the seriousness of Kane's offenses; and **(6)** Kane's sentence reflected an unwarranted sentencing disparity. See id. at 1280-82. See also United States v. Kane, 552 F.3d 748, 752 (8th Cir. 2009) (Kane III) (summarizing Kane II). We concluded reversal was required because "Kane's 120-month sentence quite simply is not proportional to the circumstances of the crimes and the persons involved." Kane II, 470 F.3d at 1282.

### 5. Kane III

In January 2008, the Supreme Court summarily granted Kane's petition for a writ of certiorari, vacated Kane II, and remanded for reconsideration in light of Gall v. United States, 552 U.S. 38 (2007). See Kane v. United States, 552 U.S. 1088, 1088 (2008).

In Gall, the Supreme Court held our rule "requiring 'proportional' justifications for departures from the Guidelines range [was] not consistent with [the Supreme Court's] remedial opinion in [Booker]." Gall, 552 U.S. at 46. We have summarized Gall's impact on our sentencing jurisprudence as follows:

Under Gall, we may no longer require extraordinary circumstances to justify a sentence outside the Guidelines range. Gall, 128 S. Ct. at 595. However, "a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." Id. at 594. If, after an "individualized assessment based on the facts presented," the district court "decides that an outside-Guidelines sentence is warranted, [the district court] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Id. at 597. It is "uncontroversial that a major departure should be supported by a more significant justification than a minor one." Id. "[A]n abuse of discretion may occur when (1) a court fails to consider a relevant factor that should have received significant weight; (2) a court gives significant weight to an improper or irrelevant factor; or (3) a court considers only the appropriate factors but in weighing those factors commits a clear error of judgment." United States v. Haack, 403 F.3d 997, 1004 (8th Cir. 2005) (internal quotation marks and citation omitted). See also Gall, 128 S. Ct. at 597.

"Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard . . . tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." Gall, 128 S. Ct. at 597. We "may consider the extent of the deviation, but [we] must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Id.

Kane III, 552 F.3d at 752-53.

-13-

On remand after <u>Kane II</u>, the government argued Kane's 120-month sentence was both procedurally and substantively unreasonable. <u>See</u> <u>id.</u> at 753. In January 2009, we agreed Kane's sentence was procedurally unreasonable after reexamining, in light of <u>Gall</u>, the six reasons why we had determined Kane's sentence to be "unreasonable" in <u>Kane II</u>. <u>See</u> <u>id.</u> at 753-56. Specifically, we determined <u>Gall</u> did not affect our underlying conclusions that the district court **(1)** clearly erred in finding Kane posed no risk to recidivate; **(2)** clearly erred in finding Kane's crimes were linked to Kane's past substance abuse and mental health issues; and **(3)** clearly erred in finding Kane committed her crimes because she was influenced by Champion. <u>See</u> <u>id.</u> at 753-54. Applying then-governing precedent, <u>United States v. Pepper</u>, 518 F.3d 949, 952-53 (8th Cir. 2008) (<u>Pepper III</u>), we held the district court **(4)** impermissibly relied on Kane's postsentencing rehabilitation. <u>See</u> <u>id.</u> at 754-55. These errors, which led us to conclude Kane's sentence was "unreasonable" in <u>Kane II</u>, amounted to "procedural error" under <u>Gall</u> in <u>Kane III</u>. <u>See</u> <u>id.</u> at 753-56.

Adhering to the Supreme Court's teachings in <u>Gall</u>, we held the district court did not commit procedural error by allegedly **(5)** failing to ensure Kane's sentence reflected the seriousness of her offenses. <u>See</u> <u>id.</u> at 755; <u>see</u> <u>also</u> 18 U.S.C. § 3553(a)(2)(A). Likewise, we held the district court did not commit procedural error under <u>Gall</u> merely by **(6)** concluding Champion was more culpable than Kane. <u>See</u> <u>Kane III</u>, 552 F.3d at 755-56; <u>see</u> <u>also</u> § 3553(a)(6). But we cautioned that "Champion's greater culpability in the abstract is not, by itself, a sufficient justification for the extent of Kane's unusually lenient sentence," and consequently held **(6\*)** "the district court committed procedural error by failing adequately to explain the chosen sentence and failing to support the degree of variance with sufficient justifications" to avoid unwarranted sentencing disparity. <u>See</u> <u>Kane III</u>, 552 F.3d at 756.

Because the district court committed procedural error under <u>Gall</u> in respects **(1)-(4)** and **(6\*)**, we vacated Kane's 120-month sentence and remanded for a second

resentencing. See id. at 753-57. We expressed "serious concerns about the substantive reasonableness of Kane's 120-month sentence," but declined to reach that issue in light of the district court's procedural errors in "substantially basing Kane's sentence on clearly erroneous factual findings, relying on Kane's post-sentence rehabilitation, and otherwise failing adequately to explain Kane's unusually lenient sentence with sufficient justifications." Kane III, 552 F.3d at 757.

### 6.    Kane IV

In March 2011, the Supreme Court summarily granted Kane's petition for a writ of certiorari, vacated the judgment in Kane III, and remanded for reconsideration in light of Pepper v. United States, 562 U.S. ___, 131 S. Ct. 1229 (2011). See Kane v. United States, 131 S. Ct. 1597, 1597 (2011).

## II.    DISCUSSION

We now reconsider Kane III in light of Pepper.

### A.    Pepper

In Pepper, the Supreme Court "h[e]ld that when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's postsentencing rehabilitation and that such evidence may, in appropriate cases, support a downward variance from the now-advisory [Guidelines] range." Pepper, 131 S. Ct. at 1236. Emphasizing that "*[n]o limitation . . .* be placed on the information concerning the background, character, and conduct" of a defendant that a district court may "receive and consider for the purpose of imposing an appropriate sentence," 18 U.S.C. § 3661, the Supreme Court determined "[a] categorical bar on the consideration of postsentencing rehabilitation evidence would directly contravene Congress' expressed intent in § 3661." Pepper, 131 S. Ct. at 1240, 1242. The Supreme Court found "evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing." Id. at 1242.

-15-

In relevant part, the Supreme Court abrogated our circuit's categorical bar on postsentencing rehabilitation evidence, reversing United States v. Pepper, 570 F.3d 958 (8th Cir. 2009) (Pepper IV) and abrogating Pepper III. The Supreme Court concluded our "ruling prohibiting the [d]istrict [c]ourt from considering any evidence of Pepper's postsentencing rehabilitation at resentencing conflicts with longstanding principles of federal sentencing law and contravenes Congress' directives in §§ 3661 and 3553(a)." Pepper, 131 S. Ct. at 1243. But the Supreme Court cautioned, "[W]e do not mean to imply that a district court must reduce a defendant's sentence upon any showing of postsentencing rehabilitation." Id. at 1249 n.17.

## B. Procedural Reasonableness
### 1. Clearly Erroneous Findings
#### a. Likelihood to Recidivate

At Kane's resentencing, the district court stated without elaboration, "I don't think you pose a danger to the public or likelihood that you'll be a recidivist."

In Kane II, we held Kane's sentence was unreasonable because "[n]othing in the record supports the district court's conclusion Kane probably will not repeat this type of crime." Kane II, 470 F.3d at 1281. We pointed out the Supreme Court has said the "risk of recidivism posed by sex offenders is frightening and high," id. (quoting Smith v. Doe, 538 U.S. 84, 103 (2003) (internal quotation marks omitted)) and observed Kane had not shown "she would not commit this type of crime again in the name of money." Id.

On remand from the Supreme Court in Kane III, Kane did not argue that Gall altered our conclusions about recidivism in Kane II. See Kane III, 552 F.3d at 753. In Kane III, we held "the district court procedurally erred by basing Kane's unusually lenient sentence, in significant part, on its unsupported determination Kane posed a low likelihood of recidivism." Id. Far from demonstrating Kane posed no risk to recidivate, we observed, "The facts show Kane repeated her crime over and over

-16-

again. Instead of protecting her daughter and choosing to stop participating in her daughter's abuse after the first, or 50th, or 150th molestation, Kane continued to hold her daughter down or block the door on more than 200 occasions while Champion sexually violated the child." Id. We held "the district court's finding Kane posed a low likelihood of recidivism, which was clearly erroneous before Gall, remains clearly erroneous after Gall." Id.

Nothing in Pepper alters our conclusion in Kane III with respect to Kane's risk to recidivate. To the contrary, the Pepper Court emphasized "the likelihood that [the defendant] will engage in future criminal conduct" is "a central factor that district courts must assess when imposing sentence." Pepper, 131 S. Ct. at 1242 (discussing 18 U.S.C. § 3553(a)(2)(B)-(C)). The district court's finding that Kane posed a low risk of recidivism, which was clearly erroneous before Pepper, remains clearly erroneous after Pepper. Therefore, we again hold **(1)** the district court procedurally erred by basing Kane's sentence on that unsupported determination. See Gall, 552 U.S. at 151 ("selecting a sentence based on clearly erroneous facts" amounts to procedural error under a deferential abuse-of-discretion standard).

b.      **Mental Health, Substance Abuse, Champion's Influence, and Kane's Responsibility for Her Crimes**

At Kane's resentencing, the district court stated, "I believe that you made yourself vulnerable with all these drugs and alcohol and all that stuff. See, you were like an accident waiting to happen." The district court explained, "I've gone below the guidelines in your case because of your prior history of this substance abuse as well as your mental health. That made you particularly susceptible to Mr. Champion's influence." The district court acknowledged Kane "had a big responsibility there," but continued, "[a]nd even though you had these problems, you know, you somewhat abdicated your responsibility."

In Kane II, we held Kane's sentence was unreasonable in part because "there is no evidence in the record linking Kane's substance abuse or mental illness with the crimes Kane committed against her daughter." Kane II, 470 F.3d at 1281. We also observed there is no "evidence in the record indicating Kane committed [her] crimes because she was susceptible to, or influenced by, Champion." Id.

In Kane III, we held Gall had no effect on the validity of our determinations in Kane II that there was no evidence in the record linking Kane's past substance abuse or mental health issues to Kane's crimes or indicating Kane committed her crimes because of Champion's influence. See Kane III, 552 F.3d at 753-54. Although we recognized there was evidence Kane had a past history of substance abuse and mental health issues, we observed "many people have substance abuse and mental health issues, but few, if any, of those people participate in and sell their minor child to a pedophile for sexual exploitation." Id. at 754. We repeated the record was devoid of evidence supporting "the district court's theories that Kane's past substance abuse and mental health issues caused Kane to be victimized by Champion, thereby minimizing Kane's responsibility for, or somehow mitigating, Kane's crimes against her daughter." Id. Finally, we pointed out "the district court also clearly erred in its assessment of Kane's responsibility for her daughter's abuse . . . . Kane did not 'somewhat abdicate' her [parental responsibilities,]" but "totally abdicated" her role as the child's protector. Id.

We discern nothing in Pepper that undercuts these conclusions in Kane III. Accordingly, we again hold the district court procedurally erred by basing Kane's sentence, in significant part, on its unsupported determinations that **(2)-(3)** Kane's substance abuse and mental health issues caused Kane to be victimized by Champion, thereby minimizing Kane's responsibility for her crimes against her daughter. See Gall, 552 U.S. at 51.

## 2. Postsentencing Rehabilitation

The district court opened Kane's resentencing hearing with the observation, "You have an improved appearance I see, so it's apparent that there is something positive happening here." After Kane's counsel represented to the district court that Kane had earned her GED, taken 84 hours of parenting classes, and 624 hours of vocational training since her first sentencing, the district court arguably found Kane's postsentencing rehabilitation weighed in favor of her request for leniency. The district court declared, "And I'm also looking at your efforts at rehabilitation. And I think you're doing an admirable job. And so I want to encourage you to continue in that vein."

In Kane II, we held a downward variance based on Kane's postsentencing rehabilitation was "inappropriate." See Kane II, 470 F.3d at 1280-81. We remarked, "While those efforts are commendable, Kane did not make those efforts until after her initial sentence was imposed and after she filed an appeal. Kane's belated rehabilitative efforts are not extraordinary and do not support a sentence reduction." Id. (citing United States v. Robinson, 454 F.3d 839, 842-43 (8th Cir. 2006)). We determined the district court "inappropriately considered the history and characteristics of Kane." Id. at 1280 (discussing 18 U.S.C. § 3553(a)(1)). We concluded Kane's sentence was unreasonable in part because of the district court's reliance on postsentencing rehabilitation. See id. at 1281.

In Kane III, we adhered to Kane II and held "the district court procedurally abused its discretion by relying on this irrelevant factor to justify the dramatic downward variance in Kane's case." Kane III, 552 F.3d at 754-55. Quoting Pepper III, 518 F.3d at 953, we held "Gall does not alter our circuit precedent . . . that post-sentence rehabilitation is an impermissible factor to consider in granting a downward variance." Id. at 754. The Supreme Court has now overruled the portions of Pepper III on which we relied in Kane III. See Pepper, 131 S. Ct. at 1251. The Pepper Court expressly disapproved of our circuit's categorical ban on postsentencing

rehabilitation evidence, holding, "District courts post-<u>Booker</u> may consider evidence of a defendant's postsentencing rehabilitation at resentencing and such evidence may, in appropriate cases, support a downward variance from the advisory Guidelines range." <u>Id.</u> at 1249.  In light of <u>Pepper</u>, we disavow our holdings to the contrary in <u>Kane II</u> and <u>Kane III</u>.  The district court did not **(4)** commit procedural error in relying on Kane's commendable efforts at postsentencing rehabilitation, which included earning her GED, and completing parenting classes and vocational training.

### 3.    Seriousness of Kane's Offenses

In <u>Kane II</u>, we held the district court failed to sufficiently consider § 3553(a)(2)(A), which required the district court to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  See <u>Kane II</u>, 470 F.3d at 1280.  In <u>Kane III</u>, on reconsideration in light of <u>Gall</u>, we held the district court did not procedurally abuse its discretion by failing to consider § 3553(a)(2)(A) and disavowed our holding in <u>Kane II</u> to the contrary.  See <u>Kane III</u>, 552 F.3d at 755. <u>Pepper</u> does not disturb that conclusion here, and we once again hold **(5)** the district court did not procedurally err by failing to account for the seriousness of Kane's offenses.

### 4.    Sentencing Disparity

At Kane's resentencing, the district court reasoned, "I still believe that the most culpable person in this case was your co-defendant, Mr. Champion," characterizing Champion as "by far the worst" and remarking, "I think it's terrible when anybody takes advantage of lesser persons."  The district court said that, "as far as the sentencing disparity, I think that Mr. Champion is far more culpable because, see, he had to think and plot as to who, you know, can I run my program on."

In <u>Kane II</u>, we held the district court wrongly considered the need to avoid unwarranted sentence disparities among similarly situated defendants.  See <u>Kane II</u>,

470 F.3d at 1281-82 (discussing 18 U.S.C. § 3553(a)(6)). Although we expressed concern § 3553(a)(6) "may more appropriately apply to disparities on a national level and not within the same conspiracy" and did not disturb the district court's finding that Champion was more culpable than Kane, we held "Kane's sentence reflects an unwarranted sentencing disparity." Id. We emphasized Champion had a lower advisory Guidelines range because he accepted responsibility for his crimes, whereas Kane "went to trial and challenged her guilt." Id.

In Kane III, we reconsidered our holding in light of Gall. See Kane III, 552 F.3d at 755-56. As a threshold matter we determined, "Although one could argue Kane and Champion are not similarly situated, and our assessment of their comparability would be different, viewed through the lens of Gall, we now conclude the district court acted within its broad discretion in resolving this conundrum in Kane's favor." Id. at 756. That said, we held:

> Gall also requires a district judge not only to consider the § 3553(a) factors, but also to "explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." Gall, 128 S. Ct. at 594. Gall specifically recognizes "failing to adequately explain the chosen sentence" constitutes "significant procedural error." Id. at 597. There is no doubt Kane's sentence constitutes an "unusually lenient sentence" as contemplated by Gall . . . . Kane's 120-month sentence amounts . . . to a 90-month downward variance from the bottom of Kane's own advisory Guidelines range . . . . Other than stating, "I think it's terrible when anybody takes advantage of lesser persons," and "[Champion] had to think and plot as to who, you know, can I run my program on," the district court provided no further insight into the reasons for its determination Kane deserved a 90-month downward variance because Champion was more culpable. Though it was within the district court's discretion to determine Champion was more culpable than Kane, Champion's greater culpability in the abstract is not, by itself, a sufficient justification for the extent of Kane's unusually lenient sentence. Thus, the district court committed procedural error by failing

adequately to explain the chosen sentence and failing to support the degree of variance with sufficient justifications.

Id. (footnote omitted). We adhere to this portion of our holding in <u>Kane III</u>, that is, **(6\*)** but not **(6)**, as nothing in <u>Pepper</u> disturbs our analysis. The Supreme Court in <u>Pepper</u> reiterated Congress's intent in § 3553(a)(6) to avoid unwarranted sentencing disparities. <u>See</u> <u>Pepper</u>, 131 S. Ct. at 1248-49.

### C.    Substantive Reasonableness

In <u>Kane III</u>, we declined the government's invitation to decide whether Kane's sentence was substantively unreasonable. <u>See</u> <u>Kane III</u>, 552 F.3d at 757. We observed:

> Given the horrifying nature of Kane's conduct, the fact Kane repeated her offense against her daughter over 200 times, and Kane's refusal to accept responsibility for her role in her daughter's abuse, we have serious concerns about the substantive reasonableness of Kane's 120-month sentence. We doubt the district court's remaining "justification is sufficiently compelling to support the degree of the variance" for the district court's deviation below the Guidelines range.

Id. (quoting <u>Gall</u>, 552 U.S. at 50). Relying in part on <u>Pepper III</u>, we reasoned the district court's procedural errors alone required reversal. <u>See</u> <u>Id.</u> (citing <u>Pepper III</u>, 518 F.3d at 953, for "declining to reach the substantive reasonableness of a sentence where the district court committed procedural error"). No longer.

Because the Supreme Court has abrogated <u>Pepper III</u>, we now decide whether Kane's 120-month sentence is substantively reasonable. We hold it is not.

We do not reach this conclusion lightly. <u>See</u> <u>Spears v. United States</u>, 555 U.S. 261, 129 S. Ct. 840 (2009) (per curiam), <u>rev'g</u> 533 F.3d 715 (8th Cir. 2008). We are cognizant of our limited and deferential role in the post-<u>Booker</u> world. It is indeed

"the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." United States v. Feemster, 572 F.3d 455, 464 (8th Cir. 2009) (en banc) (quoting United States v. Gardellini, 545 F.3d 1089, 1090 (D.C. Cir. 2009)). See also United States v. Deegan, 634 F.3d 428, 428 (8th Cir. 2010) (Murphy, J., dissenting from denial of rehearing en banc) ("Following the Supreme Court's guidance in [Gall], and subsequent cases, our court has generally considered a procedurally correct guideline sentence to be reasonable."). To our knowledge, this is the first case in which this court has held a sentence substantively unreasonable since we ingested our "bitter medicine" in Spears. See Spears, 555 U.S. at ___, 129 S. Ct. at 845 (Roberts, C.J. and Alito, J., dissenting). As the Eleventh Circuit aptly summarized in a recent federal sentencing appeal:

> We may not—it bears repeating—set aside a sentence merely because we would have decided that another one is more appropriate. A district court's sentence need not be the most appropriate one, it need only be a reasonable one. We may set aside a sentence only if we determine, after giving a full measure of deference to the sentencing judge, that the sentence imposed truly is unreasonable.

United States v. Irey, 612 F.3d 1160, 1191 (11th Cir. 2010) (en banc) (citations omitted).

The Supreme Court has yet to hold a sentence to be substantively unreasonable after Gall, but we do not infer from this fact that abuse of discretion review is a hollow exercise. The Supreme Court has unequivocally stated, "The federal courts of appeals review federal sentences and set aside those they find 'unreasonable.'" Rita v. United States, 551 U.S. 338, 341 (2007). In Rita, the Supreme Court observed, "In sentencing, as in other areas, district judges at times make mistakes that are substantive. At times, they will impose sentences that are unreasonable. Circuit courts exist to correct such mistakes when they occur." Id. at 354. Like the Eleventh

Circuit, "[w]e believe that the Supreme Court meant what it said in the <u>Rita</u> opinion and elsewhere about our duty to correct sentencing mistakes." <u>Irey</u>, 612 F.3d at 1165.

The line between what is procedural and what is substance is famously fuzzy at the margins, <u>see</u>, <u>e.g.</u>, <u>Guaranty Trust Co. v. York</u>, 326 U.S. 99, 108 (1945), but, in a case such as this one, where the procedural sentencing error stems in large measure from clearly erroneous factual findings, a procedurally unreasonable sentence would appear to be, <u>ipso</u> <u>facto</u>, substantively unreasonable. The critic will charge that procedural error is nothing more than substantive review cloaked in disguise. As a consequence, asking "what does appellate review of sentences for substantive 'reasonableness' under an abuse of discretion standard mean?" is "a question that continues to vex the nation's courts of appeals." <u>Irey</u>, 612 F.3d at 1259 (Tjoflat, J., specially concurring in part and dissenting in part). We cannot answer this question comprehensively today. Like all other circuits to address the question, we believe for present purposes it suffices to say that, "substantive review exists, in substantial part, to correct sentences that are based on unreasonable weighing decisions." <u>Irey</u>, 612 F.3d at 1193-94 (collecting cases).

Based on the record before us, the district court's 120-month sentence is the product of unreasonable weighing decisions and is, therefore, substantively unreasonable. We review and affirm many downward variances, including substantial variances in cases involving sex crimes against children. But *this* is the unusual case forecasted in <u>Feemster</u>. If anything remains of substantive reasonableness review in the courts of appeals, our court cannot ignore its duty to correct the weighing errors in this case. In other words,

> Because of the substantial deference district courts are due in sentencing, we give their decisions about what is reasonable wide berth and almost always let them pass. There is a difference, though, between recognizing that another usually has the right of way and abandoning one's post. We will not quit the post that we have been ordered to hold

-24-

in sentencing review and the responsibility that goes with it. The Supreme Court has instructed us that "[i]n sentencing, as in other areas, district judges at times make mistakes that are substantive," and that it is our duty "to correct such mistakes when they occur."

Irey, 612 F.3d at 1225 (quoting Rita, 551 U.S. at 354).

The facts of this case are as nauseating as they are horrific: for $20, Kane repeatedly sold her nine-year-old daughter to a pedophile, restraining the child to assist the pedophile in his deviant sexual gratification. The pedophile sexually molested the child more than 200 times with Kane's active participation. Instead of accepting responsibility for her crimes, Kane challenged the truthfulness of her child's testimony at trial, calling the child a liar, as the child mustered the courage to confront her abusers.

Even if Kane were to serve every day of her 120-month sentence, she would spend less than three weeks in prison for each violation of her daughter. That punishment is unreasonably lenient under the totality of the circumstances of this case, judged in light of all the § 3553(a) factors. See Irey, 612 F.3d at 1208 (holding that the district court's sentence of 17.5 years was substantively unreasonable, remarking that such sentence, "if all of it were to be served, would amount to only 4 months and a week for each of the 50 distinguishable victims that [the defendant] raped, sodomized, or sexually tortured"). Kane not only totally abdicated her parental responsibilities but also inflicted untold long-term suffering upon the child. See New York v. Ferber, 458 U.S. 747, 758 n.9 (1982) ("It has been found that sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults.") (citations omitted). The district court's sentence is patently unreasonable and

represents a clear abuse of discretion on the record and factual findings presently before us.[11]

Although the district court did not abuse its discretion in finding Champion more culpable than Kane in their conspiracy to sexually molest the child, this assessment of relative culpability did not justify the district court's decision to sentence Kane to five years less prison time than Champion. As indicated, Champion pled guilty and cooperated with the government whereas Kane denied her guilt, accused the child of lying, forced the child to relive her nightmare by testifying at trial, and put the government to the time and cost of a trial. Champion has significant health problems, including memory problems, gallstones, heart attacks, cancer, and a hernia, which the district court believed made Champion's sentence in effect a life sentence. Even accounting for her lower culpability, if any, as compared to Champion, Kane's 120-month sentence is excessively lenient in comparison.

Because the district court's sentence is substantively unreasonable, we reverse and remand for a second resentencing hearing. See Irey, 612 F.3d at 1270 (Tjoflat, J., specially concurring in part and dissenting in part) ("If a sentence constitutes an abuse of discretion, we should simply say so and return the case to the district court, the appropriate forum for the main event."). In light of our quite limited role in the sentencing process, and the district court's discretion to consider postsentencing rehabilitation, we decline to direct the entry of a particular sentence. See id.; see also

---

[11]We note § 206 of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587, 613 (2006), imposed a thirty-year mandatory minimum sentence for violations of 18 U.S.C. 2241(c). While this mandatory minimum does not apply to Kane, it demonstrates the unreasonableness of the district court's sentence. See Irey, 612 F.3d at 1209 n.31; cf. United States v. Meyer, 452 F.3d 998, 1001-02 (8th Cir. 2006) ("While our court cannot retrospectively apply enhancing amendments to the guidelines in order to calculate the defendant's guidelines range, such amendments are instructive as to whether a sentence outside of the guidelines falls within the range of reasonableness.").

Pepper, 131 S. Ct. at 1250. But see Irey, 612 F.3d at 1225 (reversing and remanding for entry of a Guidelines sentence). We hold that, under the totality of the circumstances and on the record presently before us, Kane's 120-month sentence is substantively unreasonable.

## III. CONCLUSION

We again vacate Kane's 120-month sentence and remand for resentencing consistent with this opinion. On remand, the district court may consider evidence of postsentencing rehabilitation on Kane's part, including, but not limited to, any rehabilitation after her first resentencing. See Pepper, 131 S. Ct. at 1250. Pursuant to 18 U.S.C. § 3771(a)(6) and (b)(1), we order the district court to ensure the child receives any restitution to which she is entitled from Kane.

MURPHY, Circuit Judge, dissenting.

I must respectfully dissent for the same reasons I did when this case was last before us on a petition for rehearing of our Kane III decision. The case should have been reheard then because under the developing law the district court's 120 month sentence was neither procedurally flawed nor substantively unreasonable. United States v. Kane, No. 06-1103 (8th Cir. Jan. 3, 2009) (dissent to order denying panel rehearing). The Supreme Court had made it clear in Gall v. United States, 552 U.S. 38 (2007), that a district court has a primary role at sentencing, and it had subsequently rejected one of our sentencing decisions as a "smuggled-in dish that is indigestible." See Spears v. United States, 129 S. Ct. 840, 845 (2009). Now, Ruth Kane's case has been remanded again in light of the Court's decision in Pepper v. United States, 131 S. Ct. 1229, 1249 (2011), holding that post sentencing rehabilitation may be considered in resentencing proceedings.

In my view the district court committed no procedural error in sentencing Ruth Kane to 120 months. Substantial record evidence supported its findings that Kane's

extensive history of substance abuse, mental illness, and sexual abuse increased her susceptibility to codefendant Joe Champion's influence. The presentence investigation report detailed Kane's former heroin addiction and her abusive husband who "pimped" her out for drug money. Her offenses in this case took place while she was in therapy for anxiety and depression.

Substantial evidence supported the finding that Kane was unlikely to recidivate. Her minimal criminal history was over represented and took place long before her current crimes. While the majority notes that sex offenders generally have a "high and frightening" risk of recidivism, Congress has required courts to assess recidivism risk individually. 18 U.S.C. § 3553(a)(2)(C). The record here reflects that Kane likely poses a lower risk of recidivism than the typical sex offender. When Champion ceased pressuring Kane to provide her daughter for his pleasure, her crimes stopped.

The majority also finds error in the district court's downward variance because "Champion's greater culpability . . . is not, by itself, sufficient justification" for a downward variance. Maj. Op. at 22 (emphasis added). This ignores the additional reasons for the district court's variance which can now include Kane's considerable post sentencing rehabilitation. Id. at 20; see Pepper, 131 S. Ct. at 1241. By the time of Kane's last resentencing she had already earned a GED, had taken parenting classes and hundreds of hours of vocational training, and was in a better physical and mental condition than before incarceration. The district court was also made aware that the daughter who had been victimized by Kane and Champion supported her mother's early release because it would benefit her family.

In holding the district court's earlier 120 month sentence substantively unreasonable at this juncture, the majority undercuts the district court's ability to consider all appropriate factors in fashioning Kane's resentencing. We should simply remand for resentencing under Pepper.

_____