GRASZ, Circuit Judge, concurring.
I concur in the opinion of the court as I conclude it is dictated by precedent. I write separately to express doubt about the soundness of its underpinnings. The facts of the present case make this discussion more than academic, and thus my reason for addressing the matter at this time.
After a traffic stop, Michael Johnson was found in possession of less than one thousand dollars' worth of cocaine - a serious offense to be sure, and treated as such under the Sentencing Guidelines. After he pled guilty, the Probation Office's presentence investigation report did not identify any justification for varying outside the sentence recommended by the Guidelines of 57-71 months of imprisonment, nor did the Government seek an above-Guidelines sentence. Yet the district court sentenced Johnson to 204 months (17 years) of imprisonment, nearly three times the maximum sentence recommended by the Guidelines - and effectively a life sentence for Johnson, then age 61. Perhaps reflecting these facts, the Government's brief on appeal presents less than a whole-hearted defense of the sentence.
While I believe the sentence here was excessive, I cannot conclude it is reversible error under the standard of review mandated by Supreme Court precedent. This precedent makes the substantive reasonableness of a sentence nearly unassailable on appeal and renders the role of this court in that regard somewhat akin to a rubber stamp in all but the rarest cases. See United States v. Feemster , 572 F.3d 455, 468 (8th Cir. 2009) (en banc) (Colloton, J., concurring) ("There must be at least a 'shocks the conscience' sort of constraint on district judges."); see also, e.g., United States v. Kane , 639 F.3d 1121 (8th Cir. 2011) (finding one of those rare cases).
For the benefit of anyone wondering how we got here (and not for those, such as the court, who know the tale all too well), the story begins with the Sentencing Reform Act of 1984. In passing this law, "Congress' basic goal ... was to move the sentencing system in the direction of increased uniformity." United States v. Booker , 543 U.S. 220, 253, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). To achieve this goal, Congress required sentencing courts to impose sentences in accordance with the *705 Guidelines, subject to the possibility of departures in a limited set of circumstances. See 18 U.S.C. § 3553(b)(1) ; Booker , 543 U.S. at 233-34, 125 S.Ct. 738. It also required de novo review by appellate courts of "the district court's application of the [G]uidelines to the facts" for sentences outside the Guidelines. 18 U.S.C. § 3742(e).
In Booker , the Supreme Court held that fact finding by sentencing courts that would increase an individual's sentence under the mandatory Guidelines violated the Sixth Amendment right to a jury trial. 543 U.S. at 226-44, 125 S.Ct. 738 (opinion for the Court by Stevens, J.). But rather than requiring facts that would increase an individual's sentence be proved at trial, a different majority in Booker opted to cure the constitutional infirmity by rendering the Guidelines optional for sentencing courts and by excising the statutory requirement of de novo review for non-Guidelines sentences.[2] Id. at 244-68, 125 S.Ct. 738 (opinion for the Court by Breyer, J.).
Shortly thereafter, in Gall v. United States , the Supreme Court took up the issue of appellate review of sentences in a post- Booker world. As Justice Alito noted in his dissent, Booker could be read so "that sentencing judges must still give the Guidelines' policy decisions some significant weight and that the courts of appeals must still police compliance" (what he called the "better reading" of Booker ) or it could be read "to mean that district judges, after giving the Guidelines a polite nod, may then proceed essentially as if the Sentencing Reform Act had never been enacted." Gall v. United States , 552 U.S. 38, 62, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007) (Alito, J., dissenting). The Supreme Court in Gall adopted the latter approach, rejecting this court's requirement that departures from the Guidelines should have a proportional justification. See id. at 40-60, 128 S.Ct. 586. In a companion case, the Supreme Court also held that appellate courts could not reverse sentences that departed from the Guidelines based on sentencing courts' policy disagreements with the Guidelines. See Kimbrough v. United States , 552 U.S. 85, 101-05, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007).
So, what is left for appellate courts to review in terms of substantive reasonableness in sentencing when they cannot meaningfully police compliance with the Guidelines? Of course, sentences must still comply with the sentencing factors in 18 U.S.C. § 3553(a), but these "sentencing factors ... are so broad that they impose few real restraints on sentencing judges." Gall , 552 U.S. at 63, 128 S.Ct. 586 (Alito, J., dissenting). Thus, appellate review of substantive reasonableness is usually an exercise in futility.
There is no doubt that maximizing sentencing court discretion has its benefits. See, e.g., Kimbrough , 552 U.S. at 101-05, 128 S.Ct. 558 (allowing sentencing courts to depart based on a disagreement with the Guidelines' unjustified disparity in treatment of powder and crack cocaine). But the downside, in other contexts, is the resulting disparities and inconsistencies in *706 sentencing. In the Sentencing Reform Act, Congress sought to reduce sentencing disparities by placing some limitations on the discretion of sentencing courts by means of the mandatory Guidelines. However, "[i]t is unrealistic to think [the goal of reducing sentencing disparities] can be achieved over the long term if sentencing judges need only give lipservice to the Guidelines." Gall , 552 U.S. at 63, 128 S.Ct. 586 (Alito, J., dissenting). In reality, the result of Gall and Kimbrough is that "district judges have regained most of the unconstrained discretion that Congress eliminated in 1984." Feemster , 572 F.3d at 470 (Colloton, J., concurring).
In this case, the district court imposed a sentence nearly three times the Guidelines range. The sentence appeared to be generally driven by Johnson's criminal history and specifically driven by the fact that Johnson had committed a homicide 40 years prior, a fact the district court described at the sentencing hearing as "the elephant in the room." Because of the remoteness of this conviction, it received no criminal history points under the Guidelines - although even if it had counted, the Guidelines range would still be nowhere near the 204-month sentence imposed. The court considered Johnson's criminal history in the context of the need for deterrence. See 18 U.S.C. § 3553(a)(2)(B). At the core of the district court's decision to dramatically deviate from the Guidelines appears to be a policy disagreement with the Guidelines about the weight to afford prior convictions vis-a-vis the facts surrounding the current crime of conviction. The Guidelines accounted for Johnson's criminal history, but not to the district court's satisfaction. Despite the extreme deviation, I cannot say the district court gave improper weight to this factor in light of the approach dictated by Gall and Kimbrough .[3]
The problem with this approach is that Johnson's sentence depended largely on the fortuity of having his case assigned to a judge who gave his criminal history far more weight than given under the Guidelines. This is the type of sentencing disparity Congress sought to reduce and avoid in the Sentencing Reform Act. However, because Supreme Court precedent requires us to affirm this approach, I concur dubitante.

It is worth noting that the only factual dispute here - whether the cash found on Johnson's person constituted drug proceeds - was decided in his favor. Thus, there can be no Sixth Amendment violation here. Yet we are still required to use Booker 's remedy of treating the Guidelines as merely advisory, even though Congress made them mandatory. This case bears out the truth of Justice Thomas's assessment that "the remedial majority in Booker was mistaken to craft a remedy far broader than necessary to correct constitutional error." Kimbrough v. United States , 552 U.S. 85, 114, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007) (Thomas, J., dissenting).

Under Kimbrough , it is not reversible error for the district court to follow its own preferred sentencing policy based on policy considerations, including disagreements with the Guidelines. See Kimbrough , 552 U.S. at 101-05, 128 S.Ct. 558 ; see also Spears v. United States , 555 U.S. 261, 264, 129 S.Ct. 840, 172 L.Ed.2d 596 (2009). This raises the difficult but pressing question of whether this circuit's pre-Gall language describing abuse of discretion (in the context of the substantive reasonableness of sentences) as including "clear error of judgment" in weighing § 3553(a) factors is capable of being harmonized with Kimbrough and Gall . If variance from the Guidelines based on a policy disagreement about how to weigh the sentencing factors in § 3553(a) is not an abuse of discretion, on what basis can we conclude that a sentencing court committed a "clear error of judgment" in weighing these factors?